# IN THE COURT OF APPEALS OF IOWA

No. 13-0602
Filed May 29, 2014

**STATE OF IOWA,**
　　Plaintiff-Appellee,

**vs.**

**MARK EUBANKS,**
　　Defendant-Appellant.
_____

　　Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg, Judge.


　　Defendant appeals his convictions for possession of a controlled substance and interference with official acts causing injury.  **AFFIRMED.**


　　Magdalena B. Reese and Robb Goedicke of Cooper, Goedicke, Reimer & Reese, West Des Moines, for appellant.

　　Thomas J. Miller, Attorney General, Kyle Hanson, Assistant Attorney General, John Sarcone, County Attorney, and Andrea Petrovich, Assistant County Attorney, for appellee.


　　Heard by Danilson, C.J., and Potterfield and McDonald, JJ.

**MCDONALD, J.**

Mark Eubanks was convicted of two counts of possession of a controlled substance, crack cocaine and marijuana, and interference with official acts causing injury, in violation of Iowa Code sections 124.401(5) and 719.1(1) (2011), respectively. On appeal, Eubanks argues there is insufficient evidence supporting the possession convictions. He also argues the district court erred in admitting evidence that Eubanks assaulted a police officer. Finally, he raises several claims of ineffective assistance of counsel.

I.

On November 19, 2012, a Des Moines police officer responded to a dispatch regarding a stranded vehicle on the road. The officer arrived at the scene and made contact with the driver of the vehicle, Tanesha Anderson. Anderson stated the vehicle was out of gas and she had called her boyfriend for assistance. She also stated she expected assistance to arrive in five to ten minutes, but she was unsure who. The officer performed a routine check on Anderson's name and the vehicle's license plate and discovered two things: Anderson's operating privileges were suspended; and the owner of the vehicle, Anderson's boyfriend Anthony Williams, had an outstanding warrant for his arrest. The officer informed Anderson she would be given a citation for driving with a suspended license but would not be arrested. The officer had Anderson sit in the patrol car while they waited for Anderson's help to arrive.

Several minutes later, a car pulled alongside the stalled vehicle. A then unidentified individual—subsequently identified as Eubanks—exited the vehicle

with gas can in hand. The officer believed Eubanks matched the same general description as Williams. The officer approached Eubanks and engaged him in conversation, asking him to identify himself. Eubanks identified himself as "Jackson Black," but a records check returned no results for that name. The officer asked Eubanks why there were no results for that name, and he told the officer to check records in Illinois. Again, the officer found no results. The officer separately asked Eubanks and Anderson how they knew each other, and they provided the officer with inconsistent stories, raising further suspicion. When the officer again asked Eubanks to identify himself, he again provided the officer with false information. The interaction between the officer and Eubanks was captured on the officer's dashboard video camera.

The officer called for non-emergency assistance. The video footage shows Eubanks immediately becoming agitated. The officer told Eubanks she needed to put him in handcuffs while she completed her investigation. Eubanks started arguing with her and then started to move away from the scene. When the officer grabbed one of Eubanks' wrists to stop him from leaving, he turned and punched her in the face causing her to tumble backwards. Eubanks than ran towards the second vehicle, which was now parked in front of the stalled vehicle. The officer was able to grasp Eubanks while he was attempting to enter the vehicle and yelled for him to "get on the ground." Eubanks turned on the officer, threw her to the ground, and repeatedly punched her. Eubanks fled on foot, and the second vehicle left the scene. The officer pursued at a distance and radioed for assistance.

Shortly thereafter, other officers arrived and established a perimeter around the neighborhood where Eubanks was last observed. With the assistance of a canine unit, the officers were able to locate and arrest Eubanks. The responding officer positively identified Eubanks as the person arriving at the scene and assaulting her. After Eubanks' arrest, the responding officer returned to the location of the stalled vehicle and began to look for her flashlight, which had come off her belt during the second altercation with Eubanks. Another officer assisted in the effort. While looking for the flashlight, the officers found a bag containing crack cocaine and marijuana on the ground in the area where the second altercation took place.

Eubanks was charged by trial information with the following: possession of a controlled substance, cocaine, with intent to deliver; possession of a controlled substance, marijuana; interference with official acts causing injury; and assault on a police officer causing injury. Eubanks pleaded guilty to the charge of assault on a police officer causing injury. He elected to go to trial on the remaining charges. The jury found Eubanks guilty of the lesser included offense of possession of a controlled substance, cocaine; possession of a controlled substance, marijuana; and interference with official acts causing injury. This appeal followed.

II.

Eubanks challenges the sufficiency of the evidence supporting his convictions for possession of crack cocaine and marijuana. "Sufficiency of evidence claims are reviewed for a correction of errors at law." *State v. Sanford*,

814 N.W.2d 611, 615 (Iowa 2012). "In reviewing challenges to the sufficiency of evidence supporting a guilty verdict, courts consider all of the record evidence viewed in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence." *Id.* (citation and quotation marks omitted). "We will uphold a verdict if substantial record evidence supports it." *Id.* (alteration omitted) (citation and quotation marks omitted). "Evidence is considered substantial if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt." *Id.*

"Unlawful possession of a controlled substance requires proof that the defendant: (1) exercised dominion and control over the contraband, (2) had knowledge of its presence, and (3) had knowledge that the material was a controlled substance." *State v. Bash*, 670 N.W.2d 135, 137 (Iowa 2003). "In the realm of controlled substance prosecutions, possession can be either actual or constructive." *State v. Cashen*, 666 N.W.2d 566, 569 (Iowa 2003). In this case, the controlled substances were not on Eubanks' person at the time of arrest. Eubanks contends the State was thus required to prove constructive possession. He further argues that "mere proximity to contraband is insufficient to support a finding of constructive possession." *Id.* at 572. The State disagrees this case involves a question of constructive possession. Instead, the State contends, this is a case in which there was sufficient circumstantial proof of actual possession. We agree.

As previously stated, "possession," within the meaning of Iowa Code chapter 124, can be actual or constructive. "A defendant has actual possession of the drugs if he or she has direct physical control over the drugs. Possession is constructive where the defendant has knowledge of the presence of the drugs and has the authority or right to maintain control of them." *Id.* at 569 (alteration omitted) (citation and quotation marks omitted). The defendant correctly notes that cases subsequent to *Cashen* appeared to draw a sharper distinction between actual possession and constructive possession than *Cashen* drew. These subsequent cases applied an actual possession analysis where the "substance is found on the person" and a constructive possession analysis to everything else. *See State v. Maxwell*, 743 N.W.2d 185, 193 (Iowa 2008); *see, e.g., State v. Carter*, 696 N.W.2d 31, 39 (Iowa 2005) ("Contrary to the State's contention, we find that Carter did not have actual possession of the controlled substance because it was not found on his person."); *State v. Kemp*, 688 N.W.2d 785, 789 (Iowa 2004) ("Actual possession occurs when the controlled substance is found on the defendant's person." (citation and quotation marks omitted)); *Bash*, 670 N.W.2d at 138 (same). The sharp distinction drawn in these cases between actual possession and constructive possession proved to be short-lived.

The controlling case is *State v. Vance*, 790 N.W.2d 775 (Iowa 2010). In *Vance* the police initiated a traffic stop of the defendant. 790 N.W.2d at 778. In the defendant's car, officers found a syringe, a tank filled with anhydrous ammonia, stripped lithium batteries, methamphetamine residue, and other items consistent with manufacturing methamphetamine. *Id.* at 779. Among these

items was a receipt showing a pharmacy purchase for cold medicine containing pseudoephedrine. *Id.* The police did not find pseudoephedrine on Vance's person or in his vehicle at the time of the stop. *Id.* at 784. Indeed, the police never found any pseudoephedrine. *Id.* Nonetheless, the defendant was convicted of possession of precursor products—pseudoephedrine—with intent to manufacture methamphetamine. *Id.* at 779. On appeal, the supreme court concluded there was substantial evidence supporting the jury's finding that the defendant had actual possession of pseudoephedrine even though no pseudoephedrine was ever found. *Id.* at 784.

The court's reasoning in *Vance* exposed flaws in the prior cases upon which Eubanks relies. First, there is no hard and fast distinction between actual possession and constructive possession; where the former ends and the latter begins depends on the facts and circumstances of each case and does not necessarily turn on the question of whether the contraband was found on the defendant's person. *See id.* (stating that "actual possession" is not limited to those circumstances in which the contraband is in the physical possession of the defendant at the time of the stop or the time of arrest). Second, the distinction drawn in the prior cases imposed an artificial temporal element in the offense. The statute criminalizes "possession." Nowhere does it require the defendant be caught red-handed and in physical possession at the time of the stop or arrest. *Vance* removed this artificial temporal element and recognized the State can prove past possession, whether actual or constructive. *See id.* ("Although the pseudoephedrine was not found on Vance's person at the time of the stop,

substantial evidence supports the jury's finding that *at one time* Vance had actual possession of the pseudoephedrine with the intent to manufacture methamphetamine." (emphasis added)); *see also People v. McDaniel*, 316 P.2d 660, 664 (Cal. Ct. App. 1957) (stating possession does not require proof of possession at the very time of arrest); *Womack v. State*, 738 N.E.2d 320, 324 (Ind. Ct. App. 2000) ("The state was not required to show that Womack possessed the bag of marijuana at the time of Womack's apprehension, or at the time the officers discovered the bag.").

With these principles in mind, we turn our attention to the facts of this case. Eubanks provided the officer with false information on two occasions and inconsistent information regarding his relationship with Anderson. He immediately became agitated and argumentative when the officer called for backup. Eubanks assaulted the officer and attempted to flee the scene after being informed he would be detained during investigation. All of this is circumstantial evidence of Eubanks' knowledge he was engaged in unlawful conduct—the possession of controlled substances. Even though it had rained on the night in question and the ground was wet, the drugs were on the ground in a dry, brown paper bag. Neither the bag nor the drugs were crumpled or crushed, as one would expect if they had been sitting on the roadway for any significant period of time. The drugs were found on the ground in the same location where Eubanks assaulted the responding officer, which is the same location where the officer's flashlight became detached from her belt. These events occurred early in the morning with little traffic. The scene was secured minutes after the

assault. The video footage from the dashboard camera does not show any other person entering the area from the time of the stop until the time the police secured the area. These are all facts from which it can be inferred the contraband was in the actual physical possession of the defendant immediately prior to his arrest rather than coming from some other source.

Although the contraband was not in defendant's physical possession at the time of arrest, viewing the facts in the light most favorable to the State, we conclude there is substantial evidence the cocaine and marijuana were in Eubanks' actual possession immediately prior to arrest. *See Vance*, 790 N.W.2d at 784 ("Actual possession may be shown by direct or circumstantial evidence."); *see, e.g., State v. Carey*, No. 12-1875, 2014 WL 1746574, at *2-3 (Iowa Ct. App. Apr. 30, 2014) (concluding weight of the evidence supported conviction for possession of a controlled substance where substance was found on ground where defendant and officer had an altercation); *Green v. State*, 683 S.E.2d 914, 915 (Ga. Ct. App. 2009) (holding evidence sufficient to show defendant had been in actual possession of cocaine where defendant was a passenger in a van that drove away at a high rate of speed when a police officer approached, defendant exited the van in a grassy area near a small green utility box, the officer recovered three plastic bags containing crack cocaine in the grass near the small green utility box, and officers noted that the plastic bags were dry even though it had rained earlier that evening and the ground was pretty saturated).

III.

Eubanks argues the district court erred in allowing testimony regarding Eubanks' assault on the officer because Eubanks already had pleaded guilty to the assault charge and because evidence of the assault was unduly prejudicial. Error was not preserved on the issue. At trial, Eubanks' counsel did not object to the video record of the assault. Eubanks also did not object to the responding officer's extensive testimony regarding the assault. While Eubanks' counsel did object to the admission of four photographs depicting the officer's injuries caused by Eubanks' assault, that objection is insufficient to preserve error with respect to the videotape and testimony. *See DeVoss v. State*, 648 N.W.2d 56, 62 (Iowa 2002) (discussing error preservation); *Johnson v. State Farm Auto Ins. Co.*, 504 N.W.2d 135, 139 (Iowa Ct. App. 1993).

IV.

Eubanks raises several claims of ineffective assistance of counsel. Ineffective-assistance-of-counsel claims are typically addressed in postconviction-relief proceedings where the record is more fully developed. *See Maxwell*, 743 N.W.2d at 195. When such claims are presented on direct appeal, however, the "court may decide the record is adequate to decide the claim or may choose to preserve the claim for determination under chapter 822." Iowa Code § 814.7(3). Where the record is sufficient to permit a ruling, we will address the claim on direct appeal. *See Maxwell*, 743 N.W.2d at 195. We review claims of ineffective assistance of counsel de novo. *See Castro v. State*, 795 N.W.2d 789, 792 (Iowa 2011).

To establish a claim for ineffective assistance of counsel, Eubanks must show "(1) his trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice." *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). Failure to prove either element is fatal to the claim. *See State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003). In determining whether counsel failed to perform an essential duty, we first decide if the representation dropped below an objective standard of reasonableness. *See Hinton v. Alabama*, 134 S. Ct. 1081, 1088 (2014). Regarding prejudice, the ultimate inquiry is whether trial counsel's allegedly deficient performance caused a complete "breakdown in the adversary process" such that the conviction is unreliable. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). This requires the defendant to establish "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lamasters v. State*, 821 N.W.2d 856, 866 (Iowa 2012) (quoting *Strickland*, 466 U.S. at 694).

A.

Eubanks claims his trial counsel was ineffective for failing to file a motion to suppress evidence following Eubanks' allegedly unlawful detention. Eubanks fails to identify with any specificity the nature of the motion. For example, he does not specifically identify when, why, or how his constitutional rights were infringed other than asserting he was unlawfully detained. He does not identify when the allegedly unlawful detention began. He also fails to identify what evidence should have been suppressed. The court is not obligated to construct counsel's arguments. *See State v. Stoen*, 596 N.W.2d 504, 507 (Iowa 1999);

*see also United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim. . . . Judges are not like pigs, hunting for truffles buried in briefs."). Rather than holding the claim is waived, s*ee* Iowa R. App. P. 6.903(2)(g)(3) (requiring that appellant's brief contain "the appellant's contentions and the reasons for them . . . . Failure to cite authority in support of an issue may be deemed waiver of that issue"), we preserve the issue for postconviction-relief proceedings. *See State v. Johnson*, 784 N.W.2d 192, 198 (Iowa 2010) ("[W]e hold defendants are no longer required to raise ineffective-assistance claims on direct appeal, and when they choose to do so, they are not required to make any particular record in order to preserve the claim for postconviction relief.").

### B.

Eubanks argues his trial counsel provided constitutionally deficient performance when he failed to object to the responding officer's testimony regarding the assault, photographs of injuries the officer sustained during the assault, and the video evidence of the assault. Given the elements the State is required to prove for interference with official acts causing injury, Eubanks concedes that some of the evidence was undoubtedly admissible. He contends, however, that the conduct constituting interference is separate and distinct from the conduct constituting assault; once bifurcated and categorized in this manner, he further contends, counsel should have objected to the evidence relating to the assault charge as inadmissible under Iowa Rule of Evidence 5.404(b). We

conclude Eubanks' claims fail because the objections were without merit and counsel had no duty to make non-meritorious objections.

First, Eubanks' argument appears to be predicated on the assumption that the same conduct constituting the assault to which he pleaded guilty cannot also constitute interference with official acts causing injury. This is erroneous. Interference with official acts and assault are separate statutory offenses. Each requires proof of an element the other does not. *Compare* Iowa Code §§ 708.1(1), 708.3A(3) (requiring proof of specific intent to cause pain or injury), *with* Iowa Code § 719.1(1) (requiring proof of knowing resistance or obstruction). It is well established that a defendant can be convicted and punished for violating multiple statutes arising out of a single transaction where neither statute is an included offense of the other. *See* Iowa R. Crim. P. 2.6(1) (recognizing that two or more indictable public offenses may arise from the same transaction or occurrence); *Missouri v. Hunter*, 459 U.S. 359, 367 (1983); *State v. Butler*, 505 N.W.2d 806, 807 (Iowa 1993) ("The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). Eubanks cites no law to the contrary. Thus, the entirety of the evidence to which Eubanks contends counsel should have objected was relevant to the interference charge and admissible. Had counsel lodged an objection to the evidence, the objection would have been without merit.

Second, even assuming that Eubanks' conduct could be and should be bifurcated and categorized into separate offenses as he suggests, all evidence relating to the assault charge fell outside the prohibition of rule 5.404(b) as admissible intrinsic evidence inextricably intertwined with the conduct relevant to the interference charge:

> The inextricably intertwined doctrine holds other crimes, wrongs, or acts evidence that is inextricably intertwined with the crime charged is not extrinsic evidence but, rather, intrinsic evidence that is inseparable from the crime charged. Therefore, although there are two separate offenses, the testimony about the two offenses is so closely intertwined and indivisible that the court must admit the evidence of the technically uncharged crime. Furthermore, because rule 5.404(*b*) is inapplicable to inextricably intertwined evidence, the court admits the technically uncharged-crime evidence without limitation and irrespective of its unfair prejudice or its bearing on the defendant's bad character. Instead, the inextricably intertwined evidence is subject to the same general admissibility requirements as other evidence that is used to provide the fact finder with a complete picture of the charged crime.

*State v. Nelson*, 791 N.W.2d 414, 420 (Iowa 2010) (citations and quotation marks omitted).

The two physical confrontations between Eubanks and the responding officer were part of a single continuous transaction occurring over a period of less than twenty seconds. It was necessary to admit evidence regarding the entire transaction to complete the narrative. To try and exclude evidence regarding certain parts of the transaction would have rendered the narrative confusing and incomprehensible. Eubanks' counsel conceded at argument that the crimes were inextricably intertwined and could not be separated. Thus, even had counsel made the objection, the district court could have properly overruled the

objection. "Thus, trial counsel did not fail to perform an essential duty." *State v. Shanahan*, 712 N.W.2d 121, 138 (Iowa 2006).

C.

At the beginning of Eubanks' trial, his defense counsel informed the jury that Eubanks had previously pleaded guilty to assaulting the responding officer. It is evident from reading the opening and closing statements of Eubanks' trial counsel that he alerted the jury to the guilty plea to separate the "assault" facts from the "interference" facts so the jury would convict Eubanks only of the lesser included offense, interference with official acts (as opposed to interference with official acts causing injury). Eubanks argues his counsel was ineffective for alerting the jury to Eubanks' guilty plea.

"[W]e do not delve into trial tactics and strategy when they do not clearly appear to have been misguided." *State v. Ondayog*, 722 N.W.2d 778, 786 (Iowa 2006) (citation and quotation marks omitted). "In other words, we will not reverse where counsel has made a reasonable decision concerning trial tactics and strategy, even if such judgments ultimately fail." *Id.* (citation and quotation marks omitted). Given the procedural posture of the case, we cannot say this was an unreasonable trial strategy. More important, even if we assume that Eubanks' trial counsel breached an essential duty owed Eubanks by referring to the assault conviction during opening argument, Eubanks cannot establish prejudice.

First, as previously discussed, the jury would have learned of the assault through the officer's testimony and from watching the video. Second, the responding officer's testimony and videotape constitute overwhelming evidence

establishing Eubanks was guilty of interference with official acts causing injury. There is no reasonable probability the outcome of the proceeding would have been different had counsel not alerted the jury to the assault conviction. *See State v. Thompson*, 836 N.W.2d 470, 479 (Iowa 2013) (finding no prejudice where videotaped admission established overwhelming evidence of guilt); *State v. Howard*, 825 N.W.2d 32, 41–42 (Iowa 2012) (stating error is harmless when State establishes overwhelming evidence of guilt); *State v. Denney*, No. 12-1156, 2013 WL 2370719, at *4 (Iowa Ct. App. May 30, 2013) (finding no prejudice where videotape documented commission of crime and officer testified to the same); *State v. Cerda*, No 12-0086, 2013 WL 263456, at *4 (Iowa Ct. App. Jan. 24, 2013) (finding no prejudice where videotape showing commission of crime constituted overwhelming evidence of guilt).

### D.

Eubanks contends his counsel rendered constitutionally deficient performance by failing to file a motion for new trial. Rule 2.24(2)(b)(6) allows a defendant to seek a new trial when the verdict is contrary to the law or evidence. Contrary to the evidence means contrary to the weight of the evidence. *See State v. Reeves*, 670 N.W.2d 199, 202 (Iowa 2003). "Unlike the sufficiency-of-the-evidence analysis, the weight-of-the-evidence analysis is much broader in that it involves questions of credibility and refers to a determination that more credible evidence supports one side than the other." *State v. Nitcher*, 720 N.W.2d 547, 559 (Iowa 2006). "The granting of a new trial based on the conclusion that a verdict is against the weight of the evidence is reserved for

those situations in which there is reason to believe that critical evidence has been ignored in the fact-finding process." *State v. Grant*, 722 N.W.2d 645, 648-49 (Iowa 2006). The district court has broad discretion in ruling on a motion for new trial. *See id.* at 648. Upon review of the record, there is no reason to believe that critical evidence has been ignored in this case or that the verdict is otherwise contrary to the law or evidence. In fact, the greater amount of credible evidence supports the conviction. Counsel had no duty to file a motion without any merit. *State v. Dudley*, 766 N.W.2d 606, 620 (Iowa 2009). Therefore, the failure to move for new trial was not prejudicial and does not constitute ineffective assistance.

## V.

For the foregoing reasons, the judgment of the district court is affirmed.

**AFFIRMED.**