# IN THE COURT OF APPEALS OF IOWA

No. 19-1174
Filed September 23, 2020

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**JEREMY JOHN ROUND,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Floyd County, Rustin T. Davenport, Judge.

The defendant appeals his conviction for possession of a controlled substance with intent to deliver (methamphetamine). **AFFIRMED.**

Peter Stiefel, Victor, for appellant.

Thomas J. Miller, Attorney General, and Kyle Hanson and Genevieve Reinkoester, Assistant Attorneys General, and Ryan Benn, Law Student, for appellee.

Considered by Doyle, P.J., and Mullins and Greer, JJ.

**GREER, Judge.**

A jury convicted Jeremy Round of possession of a controlled substance with intent to deliver (methamphetamine), in violation of Iowa Code sections 124.40(1)(b)(7) and 124.413 (2018). Round appeals his conviction on two grounds: (1) that the court erred in denying his motion for judgment of acquittal, and (2) that the court abused its discretion in denying his motion for a new trial based on the weight of the evidence.

## I. Background Facts and Proceedings

In May 2018, Round was stopped in a vehicle at a convenience store in Charles City, Iowa. Shortly after, Lieutenant Bradley Worrall of the Charles City Police Department arrived on the scene in response to a dispatch call regarding the validity of Round's driver's license. Lieutenant Worrall observed Round sitting in the driver's side of the vehicle and a female, later identified as Stacey Otten, exited the convenience store and entered the Jeep on the front passenger side.

Lieutenant Worrall approached the Jeep and questioned Round about the ownership of the vehicle and whether Round had registration or proof of insurance. Round confirmed his ownership of the Jeep to the officer. But he did not have registration or proof of insurance because it was registered in his wife's name as he could not register a vehicle in Iowa. Lieutenant Worrall testified Round appeared "irritated" because he did not have the registration or proof of insurance. He also testified Otten appeared "extremely nervous," "she was sweating," and she became agitated when he approached the Jeep. In the midst of this conversation, Otten exited the Jeep and left the scene, taking the keys to the Jeep with her. Round was eventually arrested, and the Jeep was towed and impounded.

After a search warrant was obtained, several officers searched the Jeep. Lieutenant Worrall searched the rear cargo compartment and rear seats and found them "completely full of clothing, men's clothing, laundry basket, work items, tools, [and] other miscellaneous tools." Lieutenant Worrall testified he believed the items seized from the rear compartment of the Jeep belonged to Round, "There were tools, jacks, men's boots, men's pants, men's shirts. There were several items that were men's clothing consistent with the size that Mr. Round is."

While searching the rear cargo compartment, Lieutenant Worrall found a magnetic key holder on the rear hatch hidden between some weather stripping and the frame of the Jeep. Lieutenant Worrall testified that the magnetized key holder was "underneath the hood of the hatch but above the weather strip . . . it could not be accessed from outside or inside. It could only have been accessed when [the hatch] was open." Lieutenant Worrall opened the key holder and found a baggie containing 6.81 grams of methamphetamine. Lieutenant Worrall stated that, in his experience, the placement of the magnetic key holder was consistent with a "high hide," meaning it was high enough above the ground that a drug sniffing canine would have trouble finding it. The search of the rear cargo area also yielded two digital scales. At Round's trial, Lieutenant Worrall testified the plastic baggies, digital scales, and the amount of methamphetamine found pointed to a person dealing methamphetamine.

Officer Dario Gamino was in charge of searching the front passenger area where Otten sat, where he found a woman's purse on the floorboard of the front passenger seat containing various items consistent with methamphetamine use. During that search, Officer Gamino also found an eyeglass container underneath

the front passenger seat that contained a used pipe with white residue. Lastly, Officer Gamino found a small black bag with a "Disney Cars" emblem under the front passenger seat. The "Cars" bag contained various items, including: two plastic bags containing a combined 42.62 grams of methamphetamine, a clear plastic baggie filled with smaller plastic baggies, a small digital scale, and a syringe. At Round's trial, Officer Gamino testified that the methamphetamine, digital scales, and baggies fit with a person dealing methamphetamine.

After the State presented these findings in its case, Round moved for a judgment of acquittal, arguing that the State had "not proved all elements of this charge at this time and has not created a question for the jury." Specifically, Round claimed the State had not proved beyond a reasonable doubt that he knowingly possessed methamphetamine because it provided no information that he knew of or possessed any of the items found in the Jeep. Similarly, Round argued the State had not proved he had the intent to deliver methamphetamine.

In Round's view, the State's evidence linked Otten to the methamphetamine, scales, and baggies found in the search. Round also asserted that the only scant evidence that pointed to him was the fact that he was driving the car. But, the court denied Round's motion, stating, "[T]he Government's case does contain sufficient evidence supporting each of the elements. The court's looking at the record drawing all reasonable inferences that support a verdict of guilty."

On day two of the trial, Round's wife, Angela, testified as a witness for the defense. Angela confirmed she owned the Jeep; it was registered in her name and the car insurance was in her name. However, her husband had been driving

the jeep for "probably a two-week period" before his arrest. A few weeks after the Jeep was impounded and searched, police returned several items from the Jeep to Angela, including men's and women's clothing. She testified that none of the items returned were hers or her husband's and all the clothing items were not her husband's size. Further, she testified she did not recognize the "Cars" bag, she had never seen Round with the bag, and the bag did not belong to any of their children. Angela also stated she had never seen the magnetic key holder that was found hidden in the rear hatch of the Jeep. Without giving specifics, she testified that she had personally seen people other than herself and Round driving the Jeep, including Otten, in the weeks before Round's arrest.

At the close of Angela's testimony, Round renewed his motion for judgment of acquittal on the same grounds as his first motion. The court denied Round's renewed motion on the same grounds as the first.

The State conceded in its closing argument that "there is no proof of actual possession in this case. . . . The State has not proven that the defendant, Jeremy Round, had methamphetamine upon his person." Thus, the State asked the jury to convict Round on a theory of constructive possession.[1] The State also acknowledged that "a person's mere presence at a place where a thing is found or proximity to the thing is not enough to support a conclusion that the person

---

[1] As to possession, the jury was instructed, in part:

> A person who, although not in actual possession, has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is in constructive possession of it. A person's mere presence at a place where a thing is found or proximity to the thing is not enough to support a conclusion that the person possessed the thing.

possessed the thing." Still the State maintained there was considerable circumstantial evidence showing that Round knowingly possessed the methamphetamine with intent to deliver.

Ultimately, the jury found Round guilty of possession with intent to deliver methamphetamine. Following his conviction, Round moved for a new trial on the grounds that the verdict was contrary to the weight of the evidence. Round's motion was denied.

Round now appeals on two grounds, asserting (1) there was insufficient evidence to support his conviction for possession of methamphetamine with intent to deliver, and (2) the court abused its discretion in denying his motion for a new trial when it concluded that the verdict was not contrary to the weight of the evidence.

## II. Scope/Standard of Review

"We review challenges to the sufficiency of the evidence for correction of errors at law." *State v. Albright*, 925 N.W.2d 144, 150 (Iowa 2019). "In reviewing challenges to the sufficiency of evidence supporting a guilty verdict, courts consider all of the record evidence viewed in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence." *State v. Reed*, 875 N.W.2d 693, 704 (Iowa 2016) (citation omitted). "A jury verdict finding of guilt will not be disturbed if there is substantial evidence to support the finding." *State v. Robinson*, 859 N.W.2d 464, 467 (Iowa 2015). Evidence is substantial if it would "convince a rational trier of fact that the defendant is guilty beyond a reasonable doubt." *Id.* (citation omitted).

We review a district court's denial of a motion for new trial for abuse of discretion. *State v. Reeves*, 670 N.W.2d 199, 202 (Iowa 2003). "Trial courts have broad discretion in passing on motions for new trial." *State v. Atley*, 564 N.W.2d 817, 821 (Iowa 1997). Abuse of discretion occurs when the district court "exercised its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Id.* (citation omitted). "On a weight-of-the-evidence claim, appellate review is limited to a review of the exercise of discretion by the trial court, not of the underlying question of whether the verdict is against the weight of the evidence." *Reeves*, 670 N.W.2d at 203.

### III. Analysis

Round first claims there was insufficient evidence to find that (1) he possessed methamphetamine and (2) he had the intent to distribute.

A. *Is there sufficient evidence Round possessed methamphetamine?*

The State conceded at trial that Round was not in actual possession of the methamphetamine found during the search of the Jeep and relied on a theory of constructive possession. "Constructive possession exists when the evidence shows the defendant has knowledge of the presence of the controlled substance and has the authority or right to maintain control of it." *Reed*, 875 N.W.2d at 706 (quoting *State v. Maxwell*, 743 N.W.2d 185, 193 (Iowa 2008)).

Round was not the legal owner of the Jeep and Otten was in the passenger seat at the time of the stop. Round's wife testified that other people sometimes drove the Jeep, although there was no other evidence offered to support her testimony. We will not recognize an inference creating a rebuttable presumption of possession involving vehicles when it has been established that multiple

individuals had equal access to the vehicle. *See State v. Kemp*, 688 N.W.2d 785, 788 (Iowa 2004). "However, a determination of constructive possession still requires we draw some inferences based on the facts of the case." *State v. Dewitt*, 811 N.W.2d 460, 475 (Iowa 2012).

> Factors guiding our inquiry include:
>
> (1) incriminating statements made by the person; (2) incriminating actions of the person upon the police's discovery of a controlled substance among or near the person's personal belongings; (3) the person's fingerprints on the packages containing the controlled substance; and (4) any other circumstances linking the person to the controlled substance.

*Maxwell*, 743 N.W.2d at 194.

> Additionally, in a motor-vehicle case, a court may also consider these factors: (1) was the contraband in plain view, (2) was it with the defendant's personal effects, (3) was it found on the same side of the car seat or next to the defendant, (4) was the defendant the owner of the vehicle, and (5) was there suspicious activity by the defendant.

*Kemp*, 688 N.W.2d at 789.

All the factors listed merely act as a guide in determining whether constructive possession has been established. *Id.* "Even if some of these facts are present, we are still required to determine whether all of the facts and circumstances . . . allow a reasonable inference that the defendant knew of the drug's presence and had control and dominion over the contraband." *State v. Cashen*, 666 N.W.2d 566, 571 (Iowa 2003). Lastly, a defendant's mere proximity to contraband cannot support a finding of constructive possession. *Reed*, 875 N.W.2d at 693. .

So, there were competing facts for the jury to weigh. *See State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012) ("Inherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury [is] free to reject certain

evidence, and credit other evidence." (alteration in original) (citation omitted)). The strongest evidence linking Round to the methamphetamine was his wife's testimony that he had been driving the Jeep for roughly two weeks before his arrest. Although Round was not the owner of the Jeep, he first told the police the Jeep was his. His control of the Jeep in the two weeks before the arrest supports an inference that he was aware of the presence of nearly fifty grams of methamphetamine, three digital scales, and plastic baggies in the vehicle. And while Round's wife testified that other people, including Otten, had recently driven the Jeep, no other evidence corroborated her claims to specifically dispute Round's exclusive control in that two-week period.

In addition, the two digital scales found among Round's personal belongings in the rear cargo compartment of the Jeep also link him to the methamphetamine and other contraband. Round told Lieutenant Worrall that he had all his tools in the vehicle, and the rear seats and cargo compartment was cluttered with tools, work boots, men's clothing, and various other items. The two scales in the rear cargo area were found after all these items were removed. There was conflicting testimony from Lieutenant Worrall and Round's wife about whether the clothing found in the Jeep was Round's size. Still, viewing the evidence in the light most favorable to the State, the jury could reasonably find Round constructively possessed the items in the vehicle. *See State v. Neitzel*, 801 N.W.2d 612, 624 (Iowa Ct. App. 2011) (finding sufficient evidence supports the defendant's conviction where he claimed there was contradictory evidence because "the credibility of witnesses is for the factfinder to decide except in rare circumstances where the testimony is absurd, impossible, or self-contradictory"). Further,

because Round stated that the vehicle was his and he had been driving it for at least two weeks, it is fair to assume that at least some of the items found during the search belonged to Round.

The location of the magnetized key holder containing 6.81 grams of methamphetamine also points to Round. Lieutenant Worrall testified that the key holder, which was hidden in the rear hatch of the Jeep, could not be accessed from inside or outside the Jeep unless the hatch was open. The jury could infer only a regular driver like Round would know to hide the key holder in such a specific location. And because the rear compartment of the Jeep contained items belonging to Round, and the key holder could not be accessed without opening the hatch, the jury could infer Round was aware of and had access to the key holder hidden in the hatch of the Jeep.

We acknowledge Round's connection to the other drugs and contraband found during the search is more tenuous. But even setting aside the drugs and contraband found in the "Cars" bag, there was sufficient evidence to support the jury's finding that Round possessed at least five grams of methamphetamine. The digital scales were found among Round's tools and other items in the rear compartment, and police found the magnetic key holder containing 6.81 grams of methamphetamine in a spot that could only be accessed when the hatch was open. No evidence linked Otten to the scales and magnetic key holder in the rear compartment and hatch of the jeep.

In sum, viewing the evidence in the light most favorable to the State, sufficient evidence supports that Round possessed over five grams of methamphetamine.

*B. Is there sufficient evidence Round possessed methamphetamine with intent to deliver?*

"Because it is difficult to prove intent by direct evidence, proof of intent usually consists of circumstantial evidence and the inferences that can be drawn from that evidence." *State v. Adams*, 554 N.W. 2d 686, 692 (Iowa 1996). Intent to deliver a controlled substance "may be inferred from the manner of packaging drugs, from large amounts of unexplained cash, as well as from the quantity of drugs." *Id.* (citations omitted). "We have also recognized that in controlled-substance prosecutions opinion testimony of law enforcement personnel experienced in the area of buying and selling drugs may be offered as evidence for purposes of aiding the trier of fact in determining intent." *State v. Grant*, 722 N.W. 2d 645, 648 (Iowa 2006).

The items discovered during the search of the Jeep constitutes ample evidence supporting the jury's verdict that Round had the intent to deliver methamphetamine. In *Grant*, the court found that 5.38 grams of methamphetamine was a substantial quantity, despite the defendant's contention that 5.38 grams was not inconsistent with personal use. 722 N.W. at 648. Here, nearly seven grams of methamphetamine were found in the magnetic key holder, an amount consistent with an intent to deliver. Lieutenant Worrell testified, "My training and experience would lend me to believe that people that are in the drug trafficking business are very ingenious about where they place their narcotics." He also testified that the placement of the key holder fit with a "high hide" where a drug sniffing dog would be less likely to detect the drugs.

The three digital scales and the plastic baggies found during the search of the Jeep reflected an intent to deliver methamphetamine. Lieutenant Worrall testified that "normally a person . . . with three scales is not utilizing that for personal use." Lieutenant Worrall also testified, "There were multiple small baggies that are extremely consistent with the repackaging and individual sale and use of methamphetamine." Officer Gamino similarly testified that the narcotics, digital scales, and small baggies aligned with a person possessing methamphetamine with intent to deliver. Viewing the evidence in the light most favorable to the State, we find that there was sufficient evidence to support the jury's verdict that Round possessed more than five grams of methamphetamine with an intent to deliver.

*C. Did the court abuse its discretion in finding the jury's verdict was not contrary to the weight of the evidence?*

"Iowa Rule of Criminal Procedure 2.24(2)(b)(6) permits a district court to grant a new trial when the verdict is contrary to law or evidence." *State v. Ary*, 877 N.W.2d 686, 706 (Iowa 2016). "A verdict is contrary to the weight of the evidence only when 'a greater amount of credible evidence supports one side of an issue or cause than the other.'" *Id.* (citation omitted). The analysis is broader than the sufficiency-of-the-evidence analysis "in that it involves questions of credibility and refers to a determination that more credible evidence supports one side than the other." *State v. Nitcher*, 720 N.W.2d 547, 559 (Iowa 2006). Yet it is "also more stringent than the sufficiency of the evidence standard in that it allows the court to grant a motion for new trial only if more evidence supports the alternative verdict as opposed to the verdict rendered." *Ary,* 877 N.W.2d at 706. "[A] district court

may invoke its power to grant a new trial on the ground that the verdict was contrary to the weight of the evidence only in the extraordinary case in which the evidence preponderates heavily against the verdict rendered." *Id.*

Here, we conclude the court did not abuse its substantial discretion in denying Round's motion for a new trial. As the trial court stated,

> The alleged suspicious activities of Stacy Otten, as noted in the motion, do not support a conclusion that a greater amount of credible evidence supports a different verdict. The greater amount of credible evidence supports the jury's conclusion that Round knowingly possessed methamphetamine and that a greater amount of credible evidence supports the conclusion that the methamphetamine was to be used for distribution. The verdict is not contrary to the weight of the evidence, and no miscarriage of justice has occurred. Accordingly, the motion for new trial is denied.

This is not an "extraordinary case where the evidence preponderates heavily against the verdict." *State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006). The jury found that at least some of the drugs in the vehicle were Round's, and "trial courts should not lessen the jury's role as the primary trier of facts and invoke their power to grant a new trial." *Id.* We affirm the district court's denial of Round's motion for new trial.

**AFFIRMED.**