# IN THE SUPREME COURT OF IOWA

No. 76 / 05-0020

Filed October 13, 2006

**STATE OF IOWA**,

   Appellee,

vs.

**DOUGLAS ARNOLD GRANT**,

   Appellant.

_____

On review from the Iowa Court of Appeals.


Appeal from the Iowa District Court for Woodbury County, John D. Ackerman, Judge.


Defendant convicted of possession with intent to deliver methamphetamine appeals challenging sufficiency of evidence to show intent to deliver. The court of appeals affirmed. **DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**


Martha M. McMinn, Sioux City, for appellant.


Thomas J. Miller, Attorney General, Mary E. Tabor, Assistant Attorney General, Nicholaus D. Garwick, Intern, and Thomas S. Mullin, County Attorney, for appellee.

**CARTER, Justice.**

Defendant, Douglas Arnold Grant, convicted following a bench trial of possession with intent to deliver methamphetamine in violation of Iowa Code section 124.401(1)(*c*)(6) (2003), a class "C" felony, appeals, challenging the sufficiency of the evidence to show intent to deliver the controlled substance found in his possession. After reviewing the record and considering the arguments presented, we affirm the decision of the court of appeals and the judgment of the district court.

Officers Wagner and Tisher of the Sioux City Police Department, who were members of an area drug task force, were trying to locate two persons suspected of manufacturing methamphetamine. Information they received from an informant indicated that defendant knew the suspects and might know of their whereabouts.

The officers went to a house in Sioux City where defendant and his brother were residing. They inquired whether the persons they were looking for were inside the house. When defendant answered in the negative, Officer Wagner asked if they could search the house to verify that their suspects were not there. Defendant replied that they could.

After entering defendant's residence, the officers discovered that defendant and his brother had recently been smoking marijuana in one of the rooms. Officer Wagner asked if they could also search the residence for marijuana. Defendant agreed that they could. The officers' search for marijuana and the persons they were looking for was unproductive, but they did find an address book containing the names of two persons known to them as manufacturers and distributors of methamphetamine.

At this point, Officer Wagner asked defendant whether he had any methamphetamine in the house. Defendant acknowledged that he might have an "eightball," which in drug parlance is approximately one-eighth of

an ounce. He led Officer Wagner to a location in the basement where two sealed tins were secreted above an air duct. In opening the tins, the officers discovered eight individually wrapped packages of methamphetamine totaling 5.38 grams in weight.[1] Also contained in one of the tins was the plastic shell of a ballpoint pen with the ink cartridge removed. The officers identified this object as a "tooter" used for inhaling methamphetamine fumes.

Defendant was charged with possession with intent to deliver more than five grams of methamphetamine, a class "B" felony. At his trial, Officers Wagner and Tisher testified and described the events that we have recited. Officer Wagner testified that, in his experience involving more than 100 cases, the packages containing between .58 and .66 grams were "dosage" units designed for sale as such in order to produce a quick high. He further testified:

> Q. And what is the significance of the fact that you see eight individually wrapped baggies of methamphetamine based on your training and experience as a police officer and as a Drug Task Force officer? A. Through my training and experience through both positions, an individual that uses methamphetamine has no reason to take methamphetamine— a larger substance of methamphetamine and put it into individual baggies when they could continually go back to the original bag and use their methamphetamine as they received it from the original bag. I don't see any reason why a user of methamphetamine would want to go through the hassle of individually packaging all their methamphetamine in small quantities of approximately half-gram to a little more—to one of them being a teener, one-sixteenth of an ounce of methamphetamine. It wouldn't be common practice for a user of methamphetamine to divide the methamphetamine into separate packaging like that.

On cross-examination, defendant's counsel developed the fact that no packaging material, scales, or large amounts of cash were found in the

---

[1]The individual weights for the eight packages were .66 grams, .65 grams, .64 grams, .40 grams, .58 grams, .62 grams, .64 grams, and 1.19 grams.

officers' search and that the address book that had been located did not describe particular drug transactions. On redirect, Officer Wagner testified:

> Q. Is the fact that you did not see pay/owe sheets, scales, or cash with the eight separately wrapped baggies of methamphetamine, does that detract from your conclusion that what you saw Mr. Grant had with him was consistent with drug dealing? A. No, it does not.
>
> Q. Why doesn't it detract from your conclusion? A. The eight individually packaged baggies in and of itself is conducive to me that someone is—has these eight packages to be distributed. As I stated earlier, if someone was just a user of illegal drugs, it would be time-consuming and cumbersome to take their larger quantity and break it up into separate baggies for them to be using at a different date when they could just take out of the original bag and use what they wanted and keep it.

On cross-examination, Sergeant Kirkpatrick of the Sioux City Police Department, supervisor of the area drug task force, admitted that the 5.38 quantity of methamphetamine found in defendant's possession did not exceed that which might be acquired for personal use.

Sergeant Kirkpatrick also testified concerning the buying and selling of methamphetamine on the street. His testimony included the following:

> DEFENDANT'S ATTORNEY: And I believe you have relied on the packaging to indicate that it was ready for resale. Couldn't it just have easily been ready for resale by the person whoever sold this to Mr. Grant? A. Anything is possible.
>
> PROSECUTING ATTORNEY: Is it probable? A. In my opinion, no. Generally, if he's going to go and buy an eightball from a dealer that sells eightball quantities, again, we're talking about the level in which you exist in this higher food chain, that person is going to have eightballs for sale, probably ounces for sale. Somebody that's selling dosage units is right at the bottom of the distribution network. They sell dosage units. They package them for quick sale. If you are in the market to buy eightballs or a couple of eightballs, your dealer is generally going to have his drugs packaged that way because of his position in the food chain.

Following a bench trial, defendant was convicted of possessing less than five grams with intent to deliver, a class "C" felony. On appeal he

challenges the sufficiency of the evidence to show an intent to deliver any portion of the controlled substance found in his possession and, in the alternative, argues that his conviction was against the weight of the evidence. We consider these issues. Other facts relevant to our decision will be considered in our discussion of the legal issues presented.

### I. *Proof of Intent to Deliver.*

Because it is difficult to prove intent by direct evidence, proof of intent usually consists of circumstantial evidence and the inferences that can be drawn from that evidence. *State v. Adams*, 554 N.W.2d 686, 692 (Iowa 1996). We have also recognized that in controlled-substance prosecutions opinion testimony by law enforcement personnel experienced in the area of buying and selling drugs may be offered as evidence for purposes of aiding the trier of fact in determining intent. *State v. Olsen*, 315 N.W.2d 1, 6-7 (Iowa 1982). We stated in *Olsen*:

> [A witness] may testify on the pattern or *modus operandi* of a certain offense and compare the facts of the case to it. The distinction is that, on the one hand, the witness is asked for an opinion based upon certain evidence as it relates to a well-defined *modus operandi* and on the other, an opinion on the guilt or innocence of the defendant. The former is proper; the latter is not.

*Id.* (citations omitted). We have also recognized that the intent to deliver a controlled substance may be inferred from the manner of packaging drugs, large amounts of unexplained cash, and the quantity of drugs possessed. *Adams*, 554 N.W.2d at 692; *State v. Birkestrand*, 239 N.W.2d 353, 362 (Iowa 1976); *State v. Dandridge*, 213 N.W.2d 903, 904 (Iowa 1974).

In *State v. Dinkins*, 553 N.W.2d 339 (Iowa Ct. App. 1996), the court of appeals was presented with a challenge to the sufficiency of the evidence to establish an intent to deliver crack cocaine. The court found that the fact that the defendant was observed interacting with persons on the street in

an area where drug trafficking was common, possessed individually wrapped rocks of crack cocaine, along with evidence from an experienced police officer that these actions conformed to those of drug dealers was sufficient to support a finding of intent to deliver. *Dinkins*, 553 N.W.2d at 342.

In the present case, although the quantity of drugs possessed was characterized as not exceeding that which might be acquired for personal use, the quantity was nonetheless substantial. This fact coupled with the packaging of the drugs and the expert testimony of experienced police officers was sufficient evidence to support the trial court's finding that defendant intended to deliver at least some of the methamphetamine that was found in his possession. Defendant's argument to the contrary is based on the assumption that he purchased the drugs wrapped in the form in which they were found at his residence. However, the State countered this theory through the testimony of Sergeant Kirkpatrick that one purchasing methamphetamine for personal use in the quantity that was involved here would ordinarily receive the substance in bulk packaging form. The district court, as trier of fact, could have found from all of the evidence that defendant possessed the substance in individual packages of small amounts to facilitate its sale.

## II. *The Weight-of-the-Evidence Argument.*

As an alternative argument, defendant contends that, if it is found that the evidence was sufficient to show intent to deliver, that finding would be against the weight of the evidence presented. This issue was raised in the district court in a motion for new trial based on Iowa Rule of Criminal Procedure 2.24(2)(*b*)(6). In acting on such motions, the district court has considerable discretion. *State v. Ellis*, 578 N.W.2d 655, 659 (Iowa 1998). We review both a grant and a denial of relief based on a weight-of-the-

evidence claim for an abuse of discretion. *State v. Reeves*, 670 N.W.2d 199, 202 (Iowa 2003).

The granting of a new trial based on the conclusion that a verdict is against the weight of the evidence is reserved for those situations in which there is reason to believe that critical evidence has been ignored in the fact-finding process. In the present case, all of the evidence presented was carefully reviewed by the district court in its findings of fact. There is no basis for concluding that any critical piece of evidence was ignored in the trial court's decision process. The district court did not abuse its discretion in denying defendant's claim that its decision was against the weight of the evidence.

We have considered all issues presented and conclude that the decision of the court of appeals and the judgment of the district court should be affirmed.

**DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**

All justices concur except Wiggins, J., and Ternus, C.J., who dissent, and Hecht, J., who takes no part.

**WIGGINS, Justice (dissenting).**

I respectfully dissent.  The only evidence of the defendant's intent to deliver is the officers' discovery of eight separate bags of methamphetamine coupled with the officers' opinion testimony about the purpose of individually wrapped bags.  Officer Wagner best expressed the basis of the officers' opinion.  He testified:

> I don't see any reason why a user of methamphetamine would want to go through the hassle of individually packaging all their methamphetamine in small quantities of approximately half-gram to a little more—to one of them being a teener, one-sixteenth of an ounce of methamphetamine.  It wouldn't be common practice for a user of methamphetamine to divide the methamphetamine into separate packaging like that.

The officers did not find packaging materials, scales, large amounts of cash, or pay/owe sheets in the residence.  Although the officers did find an address book containing the names of two persons known to them as manufacturers and distributors of methamphetamine, the officers did not find anything that could be construed as a customer list.  Additionally, in the same tin as the methamphetamine, the officers found drug paraphernalia used to consume methamphetamine, not to sell it.  Finally, the officers conceded the quantity of drugs found did not exceed that which might be acquired for personal use.

Contrary to the officers' testimony, there are many reasons, consistent with personal use explaining why the methamphetamine was packaged separately.  First, the defendant may have bought the drugs in eight different packages.  Second, the defendant may have bought the methamphetamine in one package and repackaged the drugs, planning to take just enough to use at one time.  Third, personal use makes perfect

sense when the individually packaged drugs were found in the same tin as the device to use the drugs.

"[I]ntent, being a mere act of the mind . . . is usually established by appropriate inference and presumptions from the overt acts proved." *Hall v. Wright*, 261 Iowa 758, 771-72, 156 N.W.2d 661, 669 (1968). Without any additional evidence of intent, the finder of fact would have to speculate whether the packaging indicated the defendant had the intent to sell the methamphetamine. Under this record, it is just as likely that the packaging indicated the defendant intended to use the methamphetamine for personal use. Accordingly, I believe finding eight packages of methamphetamine, in small quantities consistent with personal use, in the same container as paraphernalia used to consume these drugs, without any other evidence is insufficient to support a conviction beyond a reasonable doubt for possession with intent to deliver methamphetamine. I would reverse the conviction.

Ternus, C.J., joins this dissent.