# IN THE COURT OF APPEALS OF IOWA

No. 17-1165
Filed June 20, 2018

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ERWIN GARDUNO-RODRIGUEZ,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Crawford County, Jeffrey L. Poulson,

Judge.


        Erwin Garduno-Rodriguez appeals from his conviction for second-degree

sexual abuse.  **AFFIRMED.**



        Thomas O. Campbell of TLN Law LLC, Omaha, Nebraska, and Chinedu I.

Igbokwe of Banwo & Igbokwe Law Firm, Omaha, Nebraska, for appellant.

        Thomas J. Miller, Attorney General, and Sheryl A. Soich, Assistant Attorney

General, for appellee.



        Considered by Danilson, C.J., and Mullins and McDonald, JJ.

**DANILSON, Chief Judge.**

Erwin Garduno-Rodriguez (Garduno)[1] appeals from his conviction for second-degree sexual abuse, which arose from allegations by N.C. that when Garduno was fourteen years old, he sexually abused then seven-year-old N.C., for whom Garduno's mother provided childcare. N.C. reported the alleged abuse some three years later. Garduno challenges the sufficiency of the evidence and the trial court's denial of his motion for new trial on grounds the verdict is against the weight of the evidence. Garduno complains this is a "simple he said she said matter" and his denials should outweigh N.C.'s inconsistent accusations.

We review a challenge to the sufficiency of evidence for correction of errors at law. *State v. Howse*, 875 N.W.2d 684, 688 (Iowa 2016). "We review a trial court's findings in a jury-waived case as we would a jury verdict: If the verdict is supported by substantial evidence, we will affirm." *State v. Weaver*, 608 N.W.2d 797, 803 (Iowa 2000). We "consider all of the record evidence viewed in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence." *State v. Showens*, 845 N.W.2d 436, 439-40 (Iowa 2014) (citation omitted). "Evidence is substantial when 'a rational trier of fact could conceivably find the defendant guilty beyond a reasonable doubt.'" *Howse*, 875 N.W.2d at 688 (citation omitted).

To convict Garduno of second-degree sexual abuse, the State was required to prove: (1) that between January 1, 2011, and January 1, 2012, Garduno performed a sex act on N.C., and (2) Garduno performed the sex act while N.C.

---

[1] The defendant stated he preferred to be referred to as Garduno, and we will do so in the remainder of this opinion.

was under the age of twelve. *See* Iowa Code § 709.3(1) (2017). A "sex act" includes sexual contact between the finger or hand of one person and the genitals of another person. *See id.* § 702.17(3).

At trial, N.C. explained that she attended childcare before and after school at Garduno's residence. She testified that she would arrive early in the morning and would go to lie down on one of the couches in the living room. Garduno would come out of his room, stand or kneel over her, and touch her vagina and breasts under her clothes as she lay on the couch. N.C. testified Garduno would touch her almost every day, always for just a few minutes and while the others in the trailer were still asleep. She also stated Garduno would threaten to kill her family if she told anyone what he had done. Although N.C. initially said at a deposition that Garduno inserted his finger into her vagina, she testified at trial that she remembered he touched and rubbed her vagina but did not penetrate it with his hand. She demonstrated on a doll the way in which Garduno would slip his hand down inside the top of her pants or up through a leg opening in her clothing. She described all three of the childcare giver's sons and stated she had no doubt Garduno was the person who touched her.

N.C.'s mother testified that N.C. attended daycare at Garduno's mother's trailer home for about eight months, from October 2011 to May 2012. She stated that after about three months, N.C. became a less happy child, had instances of nightmares and bedwetting, started to scratch herself, resisted going to childcare, and displayed different behaviors at school. N.C.'s mother also testified that after she would get N.C. dressed in the morning, N.C. would put on a second pair of underwear over those her mother had put on her.

Garduno testified on his own behalf, denying the allegations. He testified he was asleep in the mornings when the daycare children arrived, and he often overslept, requiring his mother to drive him to school because he missed his bus. Garduno stated he remembered N.C. and did not like her because she screamed too much.

The defense also presented the testimony of three of the mothers of other children who were cared for by Garduno's mother[2] and one child that attended the daycare[3]—all stated that many children were present and awake mornings at the home, none observed Garduno touching N.C.

The trial court found Garduno guilty of second-degree sexual abuse. Written findings were filed, and the court summarized its findings on the record:

> In sum, the court found that [N.C.] was a credible witness, that there are some discrepancies in her story, but I found those to be consistent with her principal testimony. The court also found that there were some problems or some elements that are troublesome in [Garduno's] testimony.
> In his custodial interview, he began by saying he didn't know who she was, he then quickly changed to I didn't like her at all, and

---

[2] The mothers all seemed guarded and defensive in their testimony, seemingly concerned that they were being accused of not adequately protecting their children.
[3] During her testimony, the now-thirteen-year-old girl testified:
> Q. Are your parents friends with [Garduno's mother]? A. Yeah.
> Q. Did you talk to your parents about being here today? A. Yeah.
> Q. What did you tell them? A. That I was going to help them with their case.
> Q. When you say help, what do you mean? A. Like help defend Erwin [Garduno] because he's innocent. Like he didn't do anything wrong.
> Q. How do you know that? A. Because I'm positive that he wouldn't do anything like that, and plus, [N.C.] would do bad stuff to like—she would act weird around boys.

Of her testimony, the trial court noted,
> [The witness] displayed signs of coaching. She had unexpectedly detailed recall of N.C. and other children's drop off schedules. She also repeated a statement similar to [Garduno's] that N.C. acted weird around boys. [The witness] specifically stated that she was testifying to help Erwin with his case. The court placed little weight on [her] testimony.

at some point said that he didn't like her because she acted like a [fifteen]-year-old girl.

The balance of the defendant's testimony—or witnesses were that the children were not sleeping in the morning and that it was chaotic and there were always five or six people in the room. [Garduno's] own testimony at several points talked about [N.C.] sleeping for [thirty] minutes in the morning and talked about where the children slept.

The court essentially, in evaluating all of the evidence, finds that the State has proved beyond a reasonable doubt that defendant placed his hand or fingers on [N.C.'s] genitalia while she was under the age of [twelve] years and that he threatened to kill her or her family if she said anything.

The court finds that by evidence beyond a reasonable doubt the defendant is guilty of sexual abuse in the second degree in violation of Iowa Code sections 709.1, 709.3(1)(b), and 903B.1.

Garduno contends the State did not present sufficient evidence to support his conviction. We do not agree with Garduno that this case is similar to *State v. Smith*, 508 N.W.2d 101, 103 (Iowa Ct. App. 1993), where we reversed a defendant's convictions because we found the victims' allegations of sexual abuse were "inconsistent, self-contradictory, lacking in experiential detail, and at times, border[ed] on the absurd." N.C.'s testimony was not identical to her earlier statements, but we agree with the trial court that "[f]rom the beginning, N.C. has been consistent in her testimony that [Garduno] touched her while she laid on the couch at [daycare]."

As noted, the district court also recited inconsistencies in Garduno's testimony and described it as "troublesome." Although there was nearly a three-year delay in reporting the abuse, the district court found Garduno and N.C. had no contact during that time and thus "no reason but the truth" existed for the delay. We agree. Viewing the evidence in the light most favorable to the State and giving

weight to the factfinder's credibility assessments, we conclude there is substantial evidence supporting the trial court's findings and conclusions.

In ruling on a motion for new trial where the defendant contends the verdict is against the weight of the evidence, our review is for an abuse of the considerable discretion granted the district court. *State v. Grant*, 722 N.W.2d 645, 648 (Iowa 2006). "The granting of a new trial based on the conclusion that a verdict is against the weight of the evidence is reserved for those situations in which there is reason to believe that critical evidence has been ignored in the fact-finding process." *Id.* at 648-49. On appeal, this court is limited to examining the evidence produced at trial to determine whether the district court's determination that the evidence did not "preponderate heavily against the verdict" was a "clear and manifest abuse of discretion." *State v. Neiderbach*, 837 N.W.2d 180, 216 (Iowa 2013) (citation omitted). We do not sit to judge the credibility of witnesses nor to reweigh the evidence. *See id.* at 211-12 (citing *United States v. Ashworth*, 836 F.2d 260, 266 (6th Cir. 1988)).

This case does not present a situation in which there is reason to believe that critical evidence was ignored in the fact-finding process. *See Grant*, 722 N.W.2d at 648-49. The district court explained its reasons for finding N.C.'s testimony believable, noting "N.C.'s behavioral changes and mental health diagnoses . . . are corroborative evidence of N.C.'s testimony." We find no clear and manifest abuse of discretion and therefore affirm.

**AFFIRMED.**