# IN THE COURT OF APPEALS OF IOWA

No. 23-2013
Filed January 23, 2025

**STATE OF IOWA,**
 Plaintiff-Appellee,

**vs.**

**MARSALIS TAVORIS JONES,**
 Defendant-Appellant.
_____

 Appeal from the Iowa District Court for Linn County, Andrew Chappell, Judge.

 A defendant appeals his conviction for felony domestic abuse assault. **AFFIRMED.**

 Gregory F. Greiner, West Des Moines, for appellant.

 Brenna Bird, Attorney General, and Kevin Cmelik, Special Counsel, for appellee.

 Considered by Tabor, C.J., and Ahlers and Sandy, JJ.

**TABOR, Chief Judge.**

"[I]f there was ever a classic he said/she said case, that was it." This post-trial observation summarized the district court's view of the competing evidence presented by the prosecution and defendant Marsalis Jones. In so observing, the district court aptly noted that the jury was free to credit the victim's testimony and reject the version of events offered by Jones. On appeal, Jones challenges both the sufficiency and the weight of the evidence supporting his conviction for domestic abuse assault, third or subsequent offense. Finding no error in the court's denial of Jones's motion for judgment of acquittal and no abuse of discretion in its refusal to grant a new trial, we affirm.

## I.      Facts and Prior Proceedings

C.S. was spending the Fourth of July 2023 watching *Guardians of the Galaxy* and eating Happy Joe's pizza with her two children when Jones knocked on their door. Jones was the children's father, and he wanted to spend time with them. The parents didn't have a formal custody arrangement, and Jones would often show up for visitation without calling. This time, C.S. told Jones he would have to wait because they were finishing their meal. Jones agreed to wait in his car. But twenty minutes later, he knocked again, agitated over the delay. When C.S. told him they weren't done yet, he cursed and said he should be able to come into her house. Jones then took out his anger on C.S.'s trash cans, knocking them over and kicking the trash around the sidewalk and driveway.

C.S. responded by yelling at him to leave and threatening to call the police. As C.S. started to pick up the trash, Jones "came over and spit on [her]." In her words, "He like hacked a loogie and just spit on me." She testified that it landed in

her "front area" and some in her hair and "it was disgusting." To express her frustration, she kicked his car.[1] Her actions "enraged" Jones, who then "attacked" her. She recalled that "he was coming after me" and put his hands up in a boxing stance. She tried to push past him to go back into the house, but he punched her two or three times in the chest. C.S. called the police, but Jones left before officers arrived. She told an officer that Jones spit on her shirt and it was "still gross." She also said that Jones struck her once in the shoulder and once in the chest.[2] The officer verified that she had a red mark on her shoulder.

Jones told a slightly different story. He testified that he called ahead about visiting the children but received no response and did not leave a message. In his version, it was C.S. who "got irate" when he rang the doorbell a second time. He recalled that they were both cursing and acknowledged kicking over the garbage cans at the curb. According to Jones, C.S. then jumped onto his car and "tried to rip the headlight out the front passenger side." He remembered asking her "why [are] you acting crazy?" And then she scratched his arm and started hitting him in the face. He claimed that after she threw her last punch, he bit down on his tongue and spit on the ground. He acknowledged spitting in her direction but denied "trying to spit on her." He also denied striking her but said that he "tried to get her off me by pushing her away." After that, he figured "there's no reasoning with her, so [he] just left."

---

[1] In her deposition, C.S. denied touching Jones's car. She explained at trial that she lied about it because she felt like she "was expected by authorities to react a different way than [she] did."

[2] As trial exhibits, the State offered photographs C.S. had taken of her chest depicting slight bruising.

The State charged Jones with domestic abuse assault, third or subsequent offense, a class "D" felony under Iowa Code sections 708.2A(1) and 708.2A(4) (2023). At his trial, the jury heard from C.S., an investigating officer, and Jones. While cross-examining C.S., defense counsel asked her about text messages she sent Jones in March 2023, threatening to tell the police "your license plates number and that you have drugs on you." C.S. acknowledged sending the text but denied calling the police. She said she made the threat because she thought he had stolen something from her.

After about two and one-half hours of deliberation, the jury returned a guilty verdict on the single count of domestic abuse assault. Jones did not contest the State's allegation that he had four prior domestic abuse assault convictions.

Before sentencing, Jones moved for a new trial, alleging the verdict was against the weight of the evidence. The court denied that motion and sentenced Jones to an indeterminate five-year prison term. Jones appeals, challenging the guilty verdict in two ways: (1) as not based on substantial evidence and (2) as against the weight of the evidence.

## II. Scope and Standards of Review

On Jones's sufficiency claim, we review for correction of legal error. *State v. Lee*, 6 N.W.3d 703, 706 (Iowa 2024). We are bound by the verdict if substantial evidence supports it. *Id.* The evidence is substantial if it could convince a rational factfinder that Jones was guilty beyond a reasonable doubt. *See id.* In deciding whether the State offered substantial evidence, we view the record in the light most favorable to the verdict; that review encompasses all legitimate inferences and presumptions reasonably deduced from the evidence. *Id.* at 706–07.

On his weight-of-the-evidence claim, we take a different tack. We do not approach the evidence from a standpoint favorable to the verdict, nor do we assume the truth of the evidence offered by the prosecution. *See State v. Taylor*, 689 N.W.2d 116, 134 (Iowa 2004). But we do review the district court's denial of Jones's motion for new trial for an abuse of discretion. *State v. Krogmann*, 998 N.W.2d 141, 150 (Iowa 2023). To emphasize, we do not ourselves determine whether the verdict is contrary to the weight of the evidence; we only decide whether the district court abused its considerable discretion in denying the motion. *State v. Stendrup*, 983 N.W.2d 231, 246 (Iowa 2022). We reverse under this "deferential standard" only if the district court's ruling looms as a "clear and manifest abuse of discretion." *Id.* (citing *State v. Neiderbach*, 837 N.W.2d 180, 216 (Iowa 2013)).

### III. Analysis

### A. Sufficiency of the Evidence

In Jones's domestic abuse assault prosecution, the court instructed the jury on these elements:

> 1. On or about July 4, 2023, [Jones] either did an act which was intended to cause pain or injury to [C.S.], or result in physical contact which was insulting or offensive to [C.S.]; or did an act which was intended to place [C.S.] in fear of immediate physical contact which would have been painful, injurious, insulting or offensive to her.
> 2. [Jones] had the apparent ability to do the act.
> 3. The act occurred between persons who are the parents of the same minor child.

The court also defined specific intent as "not only being aware of doing an act and doing it voluntarily," but also "doing it with a specific purpose in mind."

Jones contests only the first element.  He argues that the State did not prove that he acted with the specific intent to assault C.S.  He points to inconsistencies in C.S.'s statements.  For example, she told the responding officer that Jones hit her once in the arm and once in the chest, but she testified that he hit her two or three times in the chest.  He likewise parses C.S.'s initial description of Jones's spit landing on her shirt, but her failure to mention to the officer that it also hit her hair.  Overall, he claims that she had a "propensity to fabricate" as shown by her text threat to "make a false report against him for possessing drugs."

In considering sufficiency questions, we view the evidence in the light most favorable to the prosecution and are "highly deferential to the jury's verdict."  *See State v. Slaughter*, 3 N.W.3d 540, 546 (Iowa 2024) (citation omitted).  We take this hands-off approach in recognition that jurors are free to believe any testimony they choose and give differing versions of an incident appropriate weight.  *See State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993) (explaining "the very function of the jury is to sort out the evidence and 'place credibility where it belongs'" (citation omitted)).  Any minor inconsistencies in C.S.'s statements—especially given Jones's overall corroboration of the event—do not defeat the guilty verdict.  *See State v. Hildreth*, 582 N.W.2d 167, 170 (Iowa 1998).

### B.  Weight of the Evidence

On top of moving for judgment of acquittal, Jones sought a new trial, contending the jury's guilty verdict was contrary to the weight of the evidence.  *See* Iowa R. Crim. P. 2.24(2)(b)(7); *State v. Ellis*, 578 N.W.2d 655, 659 (Iowa 1998).  Rule 2.24(2)(b)(7) is a safety valve, allowing courts to grant a new trial to avoid a miscarriage of justice when the evidence preponderates heavily against the

verdict. *Stendrup*, 983 N.W.2d at 246. Courts intervene only when the jurors have ignored critical evidence in their fact-finding process. *State v. Grant*, 722 N.W.2d 645, 649 (Iowa 2006). In other words, this remedy is reserved for exceptional circumstances. *State v. Ary*, 877 N.W.2d 686, 705 (Iowa 2016).

In considering Jones's new-trial motion, the court recognized that "this is a case that certainly could have gone in a direction that would have been more favorable to you, Mr. Jones, than it did. It did not." The court stressed that the jury was free to credit C.S.'s "version of events, which was largely corroborated." From there, the court reasoned that "having listened to the evidence" it could not say that Jones's version "was necessarily more credible" than C.S's testimony. Our review is limited to considering that exercise of discretion by the district court. *Taylor*, 689 N.W.2d at 134. In that limited review, we see no abuse of discretion. The jury sorted out the competing recollections of the witnesses. The district court did not find that the jury, in doing so, ignored any critical evidence. At the appellate level, we find no abuse in the district court's assessment of the weight of the evidence. This case does not present an extraordinary situation where the verdict is a miscarriage of justice. Thus, we decline to reverse Jones's conviction.

**AFFIRMED.**