# IN THE COURT OF APPEALS OF IOWA

No. 24-1608
Filed October 15, 2025

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**CARL PHILLIP PORTER,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Scott County, Jeffrey D. Bert
(suppression) and Joel W. Barrows (trial), Judges.

        A defendant challenges the stop of his vehicle and the sufficiency of the
evidence supporting his drug conviction. **AFFIRMED.**

        Martha J. Lucey, State Appellate Defender, and Melinda J. Nye, Assistant
Appellate Defender, for appellant.

        Brenna Bird, Attorney General, and Joseph D. Ferrentino, Assistant
Attorney General, for appellee.

        Considered without oral argument by Ahlers, P.J., and Chicchelly and
Sandy, JJ.

**AHLERS, Presiding Judge.**

A police officer in a patrol vehicle approached a pickup truck that had stopped right outside a big box retail store's exit door—he suspected the pickup was a getaway vehicle for a shoplifter inside the store. As soon as the patrol vehicle approached, the pickup driver pulled away from the store. The officer stopped the pickup and eventually discovered marijuana and methamphetamine inside. Carl Porter was the driver and sole occupant of the pickup.

The State charged Porter with possession with intent to deliver more than five grams of methamphetamine, failure to affix a drug tax stamp, and possession of marijuana, second offense. Porter filed a motion to suppress alleging the vehicle stop was unconstitutional, which the district court denied. Following a bench trial, the court found Porter guilty of all three charges and sentenced him accordingly.

Porter appeals. He contends (1) the district court erred in denying his motion to suppress, (2) there is insufficient evidence to establish that he intended to deliver the methamphetamine, and (3) the guilty verdict was contrary to the weight of the evidence. We address each issue in turn.

## I. The Stop

Porter argues that the officer lacked the necessary reasonable suspicion to initiate the stop, resulting in a violation of his Fourth Amendment and article I, section 8 rights against unreasonable searches and seizures. Because Porter alleges a constitutional violation, our review is de novo. *State v. Bauler*, 8 N.W.3d 892, 897 (Iowa 2024). With de novo review, we look at the totality of the circumstances and defer to the district court's findings, though we are not bound by them. *Id.*

There is no dispute that Porter was seized when the police officer stopped the pickup, so the Fourth Amendment of the federal Constitution and article I, section 8 of the Iowa constitution are implicated. *See id.* The dispute is whether the officer had reasonable suspicion to justify the stop. A traffic stop is reasonable and thus constitutional if it is supported by reasonable suspicion of a crime. *Id.* To determine whether an officer has reasonable suspicion, we look at all circumstances known to the officer and decide whether those circumstances "give rise to a reasonable belief that criminal activity may be afoot." *Id.* (quoting *State v. McIver*, 858 N.W.2d 699, 702 (Iowa 2015)).

Porter's argument that the officer lacked reasonable suspicion focuses almost entirely on Porter's actions, but it largely ignores the surrounding circumstances known to the officer. Those surrounding circumstances matter, so we take some time to detail them.

Events at the same store two months before the stop of Porter's vehicle are key and were known to the officer at the time of the stop. On that previous occasion, an older, dark-colored pickup dropped off a woman at the store and left. The woman spent nearly six hours in the store collecting multiple items. She then used her cell phone. A short time later, the same pickup pulled up to the store's door; the woman exited the store without paying for the merchandise and got in the pickup; and the pickup drove off. An asset-protection employee of the store used surveillance recordings to preserve photos of the woman and the pickup and determine the Illinois license plate number of the pickup.

On the day police stopped Porter, the same pattern repeated. The same pickup dropped the same woman off at the same entrance to the store and left.

Store employees recognized the woman and began monitoring her. A store employee contacted police. Two officers arrived and waited, hiding out of view in the store parking lot for several hours. The woman indiscriminately loaded numerous items in her cart without checking prices or spending any time looking at them. Some of the items included large duffel bags. She concealed multiples items in the duffel bags, her personal bag, and various containers she grabbed off the store's shelves. She also spent over an hour in the store bathroom. All this information—both from the prior incident and the current incident—was reported to officers.

After eleven and one-half hours in the store, the woman used her cell phone and began walking toward the exit door. Employees notified the officers accordingly. A short time after the woman used her cell phone, the same pickup pulled up to the same door of the store. One of the officers drove his patrol car from his place of hiding toward the pickup, hoping to apprehend the woman as she left the store but before she could get in the pickup to minimize the risk of escape. However, as soon as the patrol vehicle came into view, and before the woman exited the store, the pickup driver pulled away from the store and turned away from the patrol vehicle down a row in the parking lot. The officer activated the patrol car lights and stopped the pickup. Another officer drove his patrol vehicle nose to nose with the pickup to block it. As noted, a subsequent search of the pickup—a search Porter does not challenge—revealed methamphetamine and marijuana.

In support of his challenge to the constitutionality of the stop, Porter highlights the fact that officers observed no traffic violations and had no information that Porter knew of the shoplifting activity taking place in the store. But this

argument ignores the totality of the circumstances. Given the officers' knowledge of the pickup's involvement as the getaway vehicle for the prior shoplifting incident, coupled with the repetition of the same distinct conduct, it was reasonable for the officers to develop the belief that the pickup was involved in the currently occurring crime. Even if Porter didn't actually know the woman was shoplifting, officers still had reasonable suspicion to believe he was involved. As such, officers were justified in making an investigatory stop to try to resolve ambiguity as to his involvement. *See State v. Kreps*, 650 N.W.2d 636, 642 (Iowa 2002) ("The principal function of an investigatory stop is to resolve the ambiguity as to whether criminal activity is afoot."). Officers are not required to rule out the possibility of innocent behavior before briefly detaining a driver. *State v. Struve*, 956 N.W.2d 90, 96 (Iowa 2021). Even if it were equally probable that Porter was innocent of involvement in the shoplifting, the officers were "permitted to act *before* their reasonable belief is verified by escape or fruition of the harm it was their duty to prevent." *See id.* In short, the district court correctly concluded there was reasonable suspicion that criminal activity was afoot, so the stop of Porter's pickup did not violate his right to be free from an unreasonable seizure secured by both constitutions. So, we reject his challenge to the stop.

## II.     Sufficiency of Evidence

Next, Porter contends there was insufficient evidence to support his conviction for possession with intent to deliver more than five grams of methamphetamine. Our review of sufficiency-of-the-evidence challenges following a bench trial is the same as our review following a jury trial, which is for correction of errors at law. *State v. Myers*, 924 N.W.2d 823, 827 (Iowa 2019). We affirm if

the district court's verdict is supported by substantial evidence. *Id.* at 826. In assessing whether the evidence is substantial, we view the evidence in the light most favorable to the district court's decision. *Id.* at 826–27.

Porter concedes that he possessed more than five grams of methamphetamine, but he challenges the district court's finding that he intended to deliver it. He contends the evidence only supports a finding that he possessed it for personal use.

As intent is difficult to prove by direct evidence, proof of intent is usually accomplished through circumstantial evidence and inferences that can be drawn from it. *State v. Grant*, 722 N.W.2d 645, 647–48 (Iowa 2006). Circumstantial evidence of intent to deliver often includes the quantity of drugs, the packaging used, and large amounts of unexplained cash. *Id.* at 648. Opinion testimony of officers experienced with controlled-substance transactions can also aid the trier of fact in making this determination. *Id.*

Porter correctly points out that some of the evidence presented could have convinced the district court that he possessed the methamphetamine for only personal use rather than with the intent to deliver it. But our standard of review requires us to view the evidence in the light most favorable to the district court's verdict, not to an alternative verdict the district court did not reach. *State v. Brown*, 5 N.W.3d 611, 619 (Iowa 2024) ("Evidence is not insubstantial merely because we may draw different conclusions from it; the ultimate question is whether it supports the finding actually made, not whether the evidence would support a different finding." (cleaned up)). Porter possessed a large shard of methamphetamine

weighing 16.55 grams and had $2700 in one-hundred-dollar bills on him.[1] This evidence supports the district court's finding of intent to deliver. *See State v. Adams*, 554 N.W.2d 686, 692 (Iowa 1996) (finding intent to deliver when the defendant had 4.69 grams of crack cocaine and $454 in cash); *see also State v. Franco*, 932 N.W.2d 84, 87, 91 (Neb. Ct. App. 2019) (upholding a verdict finding intent to deliver based on possession of a 25-gram shard of methamphetamine and $230 in cash); *State v. Hembd*, No. 39425-1-II, 2011 WL 198704, at *6 (Wash. Ct. App. Jan. 11, 2011) (finding sufficient evidence supporting a finding of intent to deliver based on possession of a 12.2-gram shard of methamphetamine and $1000 in cash). Officers testified that the quantity of drugs, the lack of paraphernalia used to consume the drugs, the large amount of cash, and the denomination of the cash were indicative of an intent to deliver. The court found this testimony credible and used that testimony along with the other evidence to determine that Porter intended to deliver the methamphetamine. *See Grant*, 722 N.W.2d at 648 (finding intent to deliver when the defendant had 5.38 grams of individually packed methamphetamine, even though police found no money or a ledger detailing particular drug sales). Viewing the evidence in the light most favorable to the district court's verdict, there is substantial evidence of Porter's intent to deliver the methamphetamine, so his sufficiency challenge fails.

## III. Weight of the Evidence

Finally, Porter contends the trial court abused its discretion when it denied his motion for a new trial claiming the verdict was contrary to the weight of the

---

[1] Porter told officers that the cash was money he received from his work as a contractor. But the court was not required to believe that claim.

evidence.  We review such rulings for an abuse of discretion.  *State v. Stendrup*, 983 N.W.2d 231, 246 (Iowa 2022).  We do not decide ourselves whether the verdict is contrary to the weight of the evidence; instead, we only determine whether the district court abused its discretion in denying the motion.  *Id.*

After considering the motion and giving both sides an opportunity to be heard, the district court denied the motion, pointing to its verdict and stating:

> Well, and of course, this was a bench trial, and I did write the decision.  I did hear the case.  I was able to make the credibility determinations.  The court issued its findings of fact, conclusions of law, and verdicts on July 9th of 2024.  The court sees no reason to change its initial conclusions.  The verdict was clearly not contrary to the law or the weight of the evidence as assessed by the court, so defendant's motion is denied.

In the court's findings of fact and conclusions of law, it found both officers credible. The court considered the quantity of methamphetamine, the large amount and denominations of cash Porter possessed, the lack of paraphernalia, and officers' assessments that Porter's physical condition was inconsistent with a methamphetamine addiction to conclude Porter intended to deliver the methamphetamine.  In ruling on the motion for new trial, the court reiterated those credibility and weight determinations.  We find no abuse of discretion in the court's decision, so we reject Porter's challenge to the denial of his motion for new trial.

IV.    **Conclusion**

Having rejected all three of Porter's challenges, we affirm.

**AFFIRMED.**