# IN THE COURT OF APPEALS OF IOWA

––––––––––

No. 24-1268
Filed January 7, 2026

––––––––––

**State of Iowa,**
Plaintiff–Appellee,
v.
**Joseph Harold Watson,**
Defendant–Appellant.

––––––––––

Appeal from the Iowa District Court for Clinton County,
The Honorable Mark R. Lawson, Judge.

––––––––––

**AFFIRMED**

––––––––––

Martha J. Lucey, State Appellate Defender, and Mary K. Conroy, Assistant
Appellate Defender, attorneys for appellant.

Brenna Bird, Attorney General, and Martha E. Trout, Assistant Attorney
General, attorneys for appellee.

––––––––––

Considered without oral argument
by Schumacher, P.J., and Badding and Langholz, JJ.
Opinion by Badding, J.

1

**BADDING, Judge.**

In its closing argument at Joseph Watson's trial for drug charges, the State summarized the evidence for the jury:

> [Watson] has the meth at his feet. He has the baggies. He has the scale. He has the vehicle. He's got two addict women in his vehicle with him. He's dealing drugs to them. Everything else is smoke screen.

The jury saw through the smoke screen and found Watson guilty of possession of methamphetamine with intent to deliver and failure to affix a drug tax stamp.[1] Watson appeals, challenging the sufficiency of the evidence to prove that he possessed methamphetamine and intended to deliver it. Viewing the evidence in the light most favorable to the State, we find the jury's verdict is supported by substantial evidence.

## I.     Background Facts and Proceedings

Around 1:30 a.m. in July 2023, two officers with the Clinton Police Department pulled Joseph Watson over for driving without taillights. There were two female passengers in the car with Watson; both were known drug users. One woman was sitting in the front passenger seat and the other was directly behind Watson. As Watson was looking for the vehicle's registration, Officer Paul Giuliani noticed a marijuana pipe in the front console. Watson admitted the pipe was his. And he handed over some marijuana from his pocket.

The other officer, Kaleb Pritchard, asked Watson to step out of the vehicle, but he didn't immediately comply. K9 officer Brennen Roling, who had arrived as backup, noticed that Watson was fidgeting, sweating, and

---

[1] The jury also found Watson guilty of possession of marijuana, third offense, but Watson does not challenge that conviction on appeal.

nervous. From his position at the passenger window, Officer Roling saw Watson "reach once or twice, like kind of under his seat, or right down kind of by his feet." The second time, Officer Roling ordered Watson to get out of the car.

Officer Pritchard started his pat-down of Watson while Officer Roling stayed by the two women in the car. Watson immediately informed the officer that he had a BB gun and two pocketknives. Officer Pritchard didn't find anything else on Watson. Once Watson's pat-down was done, the two women were removed from the car and searched.[2] Officer Pritchard then started his search of the vehicle.

Upon opening the driver's side door, Officer Pritchard found a black zippered pouch on the floorboard, leaning up against the inside trim. The pouch contained a digital scale and a baggie with 15.07 grams of methamphetamine. Next to the pouch, the officer found a backpack, which would have been right between Watson's legs as he was sitting in the driver's seat. Watson admitted the backpack was his but denied ownership of the pouch. Inside the backpack, Officer Pritchard found several small empty baggies, as well as a lens case with two needles and baggies with methamphetamine residue. Watson was arrested and charged with possession of more than five grams of methamphetamine with intent to deliver and failure to affix a drug tax stamp.

Watson's girlfriend, who owned the car that he was driving, testified in his defense at the jury trial in May 2024. She said that Watson made jewelry as a hobby and used small plastic bags to store it. As for the

---

[2] The female passenger in the back seat had an outstanding warrant and was arrested. Nothing illegal was found on the other woman, so she was allowed to leave.

methamphetamine found in the car, Watson tried to pin it on the two passengers, arguing they could have moved the pouch over to the driver's side floorboard while Watson was being searched. The jury did not buy these explanations and found Watson guilty as charged. Watson appeals.

## II.    Standard of Review

We review challenges to the sufficiency of the evidence for the correction of errors at law. *State v. Jones*, 967 N.W.2d 336, 339 (Iowa 2021). In conducting this review, "we are highly deferential to the jury's verdict," which is binding on us if it is supported by substantial evidence. *Id.* "Substantial evidence is evidence sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *Id.*

## III.    Analysis

Watson challenges the possession elements of both his convictions. *See State v. Padavich*, 536 N.W.2d 743, 750–51 (Iowa 1995) (noting "[p]ossession is an element of possession with intent to deliver and failure to affix a drug tax stamp"). He argues "any finding that [he] knowingly possessed the methamphetamine is based on nothing more than speculation, suspicion, or conjecture." We disagree.

Possession can be either actual or constructive. *State v. Brown*, 5 N.W.3d 611, 616 (Iowa 2024). The State relied on a constructive-possession theory at Watson's jury trial.[3] "Constructive possession exists when the

---

[3] On appeal, the State also argues that Watson had actual possession of the methamphetamine even though it was not found on his person. "[O]ur appellate courts have clarified a defendant can be in actual possession of a controlled substance when the controlled substance is found on the defendant's person or when substantial evidence supports a finding it was on the defendant's person at one time." *Jones*, 967 N.W.2d at 341 (cleaned up); *see also State v. Eubanks*, No. 13-0602, 2014 WL 2346793, at *3 (Iowa Ct. App. May 29, 2014) (discussing the evolution of actual possession under our case law). But Watson contends the jury instruction on possession in this case—which mirrored the

4

evidence shows the defendant has knowledge of the presence of the controlled substance and has the authority or right to maintain control of it." *State v. Reed*, 875 N.W.2d 693, 705 (Iowa 2016) (citation omitted). Consistent with this principle, the jury was instructed:

> A person who, although not in actual possession, has both the power and intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is in constructive possession of it. A person's mere presence at a place where a thing is found or proximity to the thing is not enough to support a conclusion that the person possessed the thing.

*See id.* ("Proximity to the contraband, though pertinent, is not enough to show control and dominion." (cleaned up)).

Constructive possession, which may be proved by inferences, "turns on the peculiar facts of each case." *Brown*, 5 N.W.3d at 616 (citation omitted). Our supreme court has identified the following nonexclusive factors to consider when contraband is discovered in a jointly occupied space, as it was here:

> (1) incriminating statements made by a person; (2) incriminating actions of the person upon the police's discovery of a controlled substance among or near the person's personal belongings; (3) the person's fingerprints on the packages containing the controlled substance; and (4) any other circumstances linking the person to the controlled substance.

*Reed*, 875 N.W.2d at 706 (citation omitted). In motor vehicle cases, we may also consider:

---

uniform instruction and went unchallenged by the State—gave a more restrictive definition, requiring the State to prove that he "had the methamphetamine *on his person*." It is generally true that "[j]ury instructions, when not objected to, become the law of the case for purposes of appellate review for sufficiency-of-evidence claims." *State v. Schiebout*, 944 N.W.2d 666, 671 (Iowa 2020). However, we need not decide the law of the case or resolve the question of actual possession because there was substantial evidence that Watson constructively possessed the methamphetamine.

(1) was the contraband in plain view, (2) was it with the defendant's personal effects, (3) was it found on the same side of the car seat or next to the defendant, (4) was the defendant the owner of the vehicle, and (5) was there suspicious activity by the defendant.

*State v. Kemp*, 688 N.W.2d 785, 789 (Iowa 2004).

Watson is correct that some of these factors weigh in his favor. He cooperated with the officers—even admitting that he had marijuana in his pocket—and did not make any incriminating statements about the methamphetamine in the pouch. In fact, Watson repeatedly denied that the pouch was his. And no fingerprints were developed from the pouch or its contents. Yet the factors outlined above "are only to be used as a guide in determining whether the State has established constructive possession." *Id.* "Even if some of the facts are present, we are still required to determine whether all of the facts and circumstances allow a reasonable inference that the defendant knew of the drugs' presence and had control and dominion over the contraband." *Id.* (cleaned up). When all the facts and circumstances are examined in the light most favorable to the State, we find substantial evidence supported the jury's conclusion that Watson had constructive possession of the methamphetamine.

Responding officers described Watson as "pretty nervous" and sweating during the stop, which took place at 1:30 a.m. in a city where Watson did not reside. Officer Roling observed that Watson delayed getting out of the car and "just fidgeted a lot." He further testified that after Watson told the other officer that he would step out, he reached down by his feet twice. *See State v. Carter*, 696 N.W.2d 31, 40 (Iowa 2005) (discussing a defendant's nervous behavior and furtive movements in analyzing constructive possession). Once Watson exited the car, Officer Pritchard found a black zippered pouch on the floorboard of the driver's seat, between the door and

6

Watson's backpack. *See Brown*, 5 N.W.3d at 618 (stating a jury could reasonably infer the defendant knew about the presence of a firearm in the car "based on the location of the firearm directly under the seat where [he] had recently been sitting to drive"); *Carter*, 696 N.W.2d at 40 (finding constructive possession where "[t]he controlled substances were found on the driver's side of the console" within close reach of the defendant when he was operating the vehicle).

Watson argues the back passenger—who was a known drug user— could "have pushed the pouch through with her foot to the driver's floorboard from the backseat." He highlights several brief moments from the videos of the stop when Officer Roling looked away from the passengers while Watson was being searched. But Officer Roling testified that he "was more concentrating on the passengers" than on Watson. And Officer Pritchard, who found the pouch, testified that it was unlikely the back passenger could have pushed it through because "the pouch would have had to be pushed under the seat, to the left, and up onto . . . the little lip where the door is." He also noted the backpack was blocking the space under the driver's seat.

Watson presented his alternative explanations to the jury, which was free to accept or reject his version of the facts. *See Jones*, 967 N.W.2d at 343 ("While the defendant has an alternative explanation for the evidence, the jury was not required to accept the defendant's version of the events." (cleaned up)). "It is not our place to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; such matters are for the jury." *State v. Brimmer*, 983 N.W.2d 247, 256 (Iowa 2022) (citation omitted). Considering the evidence in the light most favorable to the jury's verdict on

possession, we find that it "is supported by logical inferences drawn from the record rather than impermissible speculation." *Brown*, 5 N.W.3d at 619.

We reach the same conclusion on Watson's challenge to the sufficiency of the evidence that he intended to deliver the methamphetamine. "Because it is difficult to prove intent by direct evidence, proof of intent usually consists of circumstantial evidence and the inferences that can be drawn from that evidence." *State v. Grant*, 722 N.W.2d 645, 647–48 (Iowa 2006). Some of those inferences include "the manner of packaging drugs, large amounts of unexplained cash, and the quantity of drugs possessed." *Id.* at 648. Watson argues the State did not present substantial evidence on this element because he was not found with a large amount of cash or individually packaged baggies of methamphetamine. He also points out that officers searched his phone and found no evidence of drug dealing. And Watson relies on his girlfriend's testimony about his jewelry-making hobby to explain the small baggies in his backpack.

The State, however, presented testimony from Josh Winter, an officer with an area drug task force, about his experience with drug trafficking. *See id.* (recognizing that "in controlled-substance prosecutions opinion testimony by law enforcement personnel experienced in the area of buying and selling drugs may be offered as evidence for purposes of aiding the trier of fact in determining intent"). Officer Winter testified "there's not a lot of money sitting around with the methamphetamine world." He explained that methamphetamine users often supply their habit by selling some of what they buy: "The more you buy, the cheaper the rate, so a lot of times . . . an individual may purchase, let's say, an ounce of methamphetamine; may sell half of that ounce. Well, if they sell it in smaller increments, they can typically make their money back and be even."

Officer Winter also testified that individual users usually only make "purchases of somewhere around 3 1/2 to 7 grams," not 15.07 grams like Watson possessed. While he thought it might be possible that a user would have that amount, it was not "necessarily practical." And Officer Winter testified that clean, small plastic baggies—like those found in Watson's backpack—are common in methamphetamine sales because they allow for easier handoff transactions. The presence of those baggies, along with the digital scale and the amount of methamphetamine, led the officer to conclude that Watson intended to deliver the drug. *See State v. Round*, No. 19-1174, 2020 WL 5650763, at *5 (Iowa Ct. App. Sept. 23, 2020) ("The three digital scales and the plastic baggies found during the search of the Jeep reflected an intent to deliver methamphetamine."). Watson's arguments otherwise ask this court to weigh the evidence differently than the jury—which, again, is something we cannot do. *Brimmer*, 983 N.W.2d at 256.

Giving appropriate deference to the jury's verdict, we find substantial evidence to support Watson's convictions for possession with intent to deliver more than five grams of methamphetamine and failure to affix a drug tax stamp.

**AFFIRMED.**