# IN THE COURT OF APPEALS OF IOWA

————————————

No. 25-0289
Filed February 25, 2026

————————————

**State of Iowa,**
Plaintiff–Appellee,
v.
**Jamie Lee Peed,**
Defendant–Appellant.

————————————

Appeal from the Iowa District Court for Calhoun County,
The Honorable Kurt J. Stoebe and The Honorable Derek Johnson, Judges.

————————————

**AFFIRMED**

————————————

Martha J. Lucey, State Appellate Defender, and Vidhya K. Reddy,
Assistant Appellate Defender, attorneys for appellant.

Brenna Bird, Attorney General, and Katherine Wenman,
Assistant Attorney General, attorneys for appellee.

————————————

Considered without oral argument
by Tabor, C.J., and Badding and Sandy, JJ.
Opinion by Tabor, C.J.

**TABOR, Chief Judge.**

A jury convicted Jamie Peed of third-degree sexual abuse after hearing testimony that he performed a sex act on a fourteen-year-old girl. He appeals this conviction, raising two claims. First, Peed argues the State offered insufficient evidence of his guilt. Second, he alleges the greater weight of the evidence tipped away from the verdict so the district court should have granted his motion for new trial. Finding sufficient evidence to support his conviction and that the district court did not abuse its discretion in denying a new trial, we affirm.

## I.     Facts and Prior Proceedings

In the summer of 2015, fourteen-year-old A.J. went to Peed's house in Pomeroy. She and other teenagers often gathered at the twenty-seven-year-old's house, which was painted a distinctive purple, to hang out and play video games. Or as the prosecutor put it, "do what kids do in small town Iowa." A.J. described Peed's house as "an adult free zone" and recalled considering him to be "like one of our friends."

One night after her friends left, A.J. was alone with Peed. She testified that he took her to his bedroom, kissed her, and put on a condom. Peed then put his penis into her vagina. After the sex act, Peed threw the condom in the wastebasket next to the bed. A.J. went into the bathroom and was "panicked" to see "hickeys" caused by Peed. When A.J. told Peed she was worried about her mother seeing the marks on her neck, he offered advice on how to conceal

them. A.J. took a picture of the bruises after she applied makeup and put on a necklace to reassure Peed that she covered them.[1]

The next morning, A.J. and her best friend, A.B., went back to the purple house. With them was another friend, C.S., who viewed Peed as "essentially [his] older brother." Upon entering the house, A.J. showed her friends the used condom that Peed threw in the wastebasket. All three remembered seeing the condom at the top of the trash.

According to A.J., a few days after Peed performed a sex act on her, her friends stopped inviting her to hang out at his purple house. She said being unwelcome at his house "strained friendships pretty hard because they all wanted to go over to [Peed]'s and I was not allowed to." A.J. also recalled that rumors about her having sex with Peed "starting going around [her] school and [she] was getting called all these horrible names." She testified "the bullying got so bad" that she enrolled in a different high school to graduate.

Then, about four years later, Peed contacted A.J. on Facebook messenger. In a July 2019 message, he expressed regret for his conduct:

> Hey I know it's been a while but I wanted to try to apologise for my actions to you when you were younger[.] I wasn't thinking and took advantage of you and for that I apologise[.] I know you've seen me as a disgusting man and all but please understand I fucked up the friendship we had by immature action and not using logic and respect[.] I truly am sorry take care.

---

[1] At trial, the State offered that photograph, dated June 2015, as an exhibit. A.J. described the depiction: "It is my neck covered in the concealer wearing a choker to hide the hickeys."

Then two years later, A.J.'s friend, A.B., contacted Peed by Facebook messenger. A.B. initiated their conversation by inviting Peed to join her "Only Fans" page.[2] A.B. testified that was just a ruse so that Peed would not block her communications.

A.B. also testified that she was angry with him for performing a sex act on A.J. in 2015. In a series of messages in 2021, A.B. accused Peed of being "a rapist" because he was "an adult" and A.J. was "a child" when the sex act occurred. Peed told A.B. that he didn't remember what happened because he was taking Ecstasy. When A.B. asked, "Didn't you guys have sex? Peed replied: "I don't recall as I said she told me we did so I apologized to her based off that . . . ."

Fast forward two more years. A.J. was shopping at the Dollar General when she ran into Peed. She recalled being "very uncomfortable" because she was "trying to get groceries or something and he decided to have a conversation about my dating life." After that 2023 encounter, A.J. decided to report Peed's 2015 sex act to law enforcement. As part of the investigation, Pomeroy police chief Lorie Gerdes interviewed Peed, telling him she wanted to "get to the bottom" of A.J.'s accusation. In the recorded interview, Peed said: "I honestly don't recall that night." But he said he did remember "bits and pieces" such as "having friends over at his house that night."

The State charged Peed with sexual abuse in the third degree, a class "C" felony under Iowa Code sections 709.4(1)(b)(3)(d) and 709.4(2) (2015). At trial, A.J. testified that she "waited so long" to report the crime because "I was a child. I didn't know how wrong it was. But me being an adult

---

[2] According to police testimony, Only Fans is a "pornographic site" where people post photographs of themselves and viewers pay to see them.

and looking back at it, that was so wrong." In his testimony, Peed denied performing a sex act on A.J. He also testified that he had not taken possession of the purple house until March 2016.[3] After hearing all the evidence, the jury found him guilty as charged. Before sentencing, Peed moved for a new trial, alleging the verdict was against the weight of the evidence. The court denied his motion.

Peed now appeals, challenging the guilty verdict (1) as not sufficiently supported by substantial evidence, requiring his acquittal, or alternatively, (2) as against the weight of the evidence, necessitating a new trial.

## II. Scope and Standards of Review

On Peed's sufficiency claim, we review for correction of errors at law. *State v. Jones*, 967 N.W.2d 336, 339 (Iowa 2021). We are "highly deferential to the jury's verdict." *Id*. If the verdict is supported by substantial evidence, it is binding upon this court. *Id*. Evidence is substantial when it can "convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *Id*. We review the evidence in the light most favorable to the verdict including all legitimate inferences and presumptions that can be reasonably deduced from the evidence. *State v. Lee*, 6 N.W.3d 703, 706-07 (Iowa 2024).

On his weight-of-the-evidence claim, we review the denial of the motion for new trial for abuse of discretion. *State v. Stendrup*, 983 N.W.2d 231, 246 (Iowa 2022). We do not determine ourselves whether the verdict is contrary to the weight of the evidence but rather whether the district court

---

[3] Peed produced a written agreement with his landlord, who also testified at trial, showing that his move-in date was March 16. But the State introduced evidence to show Peed had paid the water bill starting in May 2014. The parties presented conflicting evidence on the water usage during the timeframe in question.

abused its considerable discretion when denying the motion. *Id*. We are deferential to the district court's ruling and will only reverse if there is a "clear and manifest abuse of discretion." *Id*. (quoting *State v. Neiderbach*, 837 N.W.2d 180, 216 (Iowa 2013)).

## III.  Analysis

### A. Sufficiency of the Evidence

To convict Peed, the jury had to find that the State proved these elements beyond a reasonable doubt:

> On a date between March 9, 2015, and March 7, 2017, in Calhoun County, Iowa, Jamie Peed performed a sex act with [A.J.] by penetration of his penis into her vagina.
>
> Jamie Peed performed the sex act while [A.J.] was 14 or 15 years old, and both the following are true
>
> Jamie Peed was four or more years older than [A.J.]; and
>
> Jamie Peed and [A.J.] were not then living together as husband and wife.

On appeal, Peed claims there was insufficient evidence to show he committed a sex act on A.J. To back that claim, he discusses the nine-year gap between the alleged sex act and A.J.'s report to police. He argues: "The allegation was not reported at that time, and no physical evidence was collected that could prove the existence of the historical sex act."

We reject that argument for two reasons. First, physical evidence was not necessary to convict Peed. As the State argues, A.J.'s testimony itself was substantial evidence of Peed's guilt. *See State v. Mathis*, 971 N.W.2d 514, 518 (Iowa 2022); *see also State v. Knox*, 536 N.W.2d 735, 742 (Iowa 1995) ("The law has abandoned the notion that a rape victim's accusation must be

corroborated."). Second, the State *did* present evidence corroborating A.J.'s recollections, including testimony from A.B. and C.S. about the used condom, the photograph of A.J.'s neck, and Peed's apology for his actions. And although Peed told Chief Gerdes that he didn't recall performing a sex act on A.J., he did remember having guests at his house on the night in question. That admission undermines his claim that he did not occupy the purple house until March 2016.

Peed next points to inconsistencies regarding the date of the sex act. For example, in one message to Peed, A.J. referred to being thirteen at the time of the sex act. And A.B. once said Peed had sex with her friend when she was sixteen. But both A.J. and A.B. testified at trial that A.J. was fourteen when the sex act occurred. The jury was free to believe their trial testimony. *State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993). What's more, the State is not required to prove the precise time of a crime. *State v. Yeo*, 659 N.W.2d 544, 550 (Iowa 2003).

Finally, Peed highlights several discrepancies among the witnesses who tried to recount their movements nearly a decade earlier. Those discrepancies were for the jury to sort through. It is the jury's role to determine the credibility of witnesses and what evidence to accept or reject. *See State v. Brimmer*, 983 N.W.2d 247, 256 (Iowa 2022). We review the evidence in the light most favorable to the jury's verdict. *State v. Tipton*, 867 N.W.2d 653, 692 (Iowa 2017). In doing so, we find substantial evidence to support the jury's guilty verdict.

## B. Weight of the Evidence

Peed also argues the jury's verdict was contrary to the weight of the evidence and the district court abused its discretion when denying his motion

for a new trial on this basis. *See* Iowa R. Crim. P. 2.24(2)(b)(7). When reviewing such a claim, we will only intercede in extraordinary circumstances such as an allegation that critical evidence has been ignored. *See State v. Grant*, 722 N.W.2d 645, 649 (Iowa 2006).

Peed does not assert that the district court overlooked any evidence, nor does he argue that the court used the wrong legal standard. Rather, Peed again points to inconsistent testimony among the State's witnesses. Beyond those inconsistencies, Peed recounts his testimony that A.B. tried to set him up after he rejected her invitation to subscribe to her OnlyFans site in 2021. He also suggests that the district court should have given more weight to A.J.'s delay in reporting and the lack of physical evidence.

In response, the State argues that appellate review of this claim should be limited to the arguments Peed made in his motion for new trial. In its estimation, "he pointed to very specific pieces of evidence he believed discredited A.J.'s testimony" and "the district court responded to those pieces of evidence." But the State does not specify what part of Peed's appellate argument is not preserved for our review. And in his reply brief, Peed contends our review should consider all the evidence in the record.

Assuming without deciding error was preserved and considering all the evidence in the record, we find the district court did not clearly and manifestly abuse its discretion in denying the new trial motion. *See State v. Neiderbach*, 837 N.W.2d 180, 216 (Iowa 2013). We cannot say the evidence preponderated *heavily* against the conclusion that Peed committed a sex act on A.J. when she was fourteen years old.

The inconsistencies he chronicles were minor and did not weigh heavily against the verdict. As for Peed's claim that he was "set up," the

record reflects A.B. contacted him in May 2021, two-and-a-half years before A.J. filed her complaint with law enforcement. While there was testimony showing A.B. tried to convince A.J. to report the crime for several years, there is no evidence besides Peed's own testimony to suggest a conspiracy against him.

On the delayed reporting, A.J. explained why she waited until 2023 to come forward. She testified that she was too young to understand the wrongfulness of the sex act when it happened and later her discomfort with seeing Peed in public compelled her to report the crime.

The district court reviewed the trial transcript and found "[A.J.] testified credibly that the sex act occurred in June of 2015."[4] The court noted that any doubt about the date the sex act occurred was not contrary to the weight of the evidence that a sex act in fact occurred. We find no abuse of discretion in the district court's ruling

**AFFIRMED.**

---

[4] The judge who presided over the first two days of the trial had a personal emergency and a second judge had to complete the trial. The State's case concluded on the second day of trial. The parties do not suggest that these circumstances call for any difference in our review of the second judge's ruling on the motion for new trial.